Cesar A. **PERALES**, Commissioner of Social Services of the State of New York, Plaintiff,

v.

The **UNITED STATES** of America and John R. Block, Secretary, United States Department of Agriculture, Defendants.

No. 83 Civ. 5850–CLB.

United States District Court, S.D. New York.

May 14, 1984.

Daniel D. Kaplan, Asst. Atty. Gen., for the State of N.Y., New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., for the Southern Dist. of New York by Richard A. Simpson, Asst. U.S. Atty., New York City, for defendants.

MEMORANDUM AND ORDER

BRIEANT, District Judge.

The Food Stamp Act of 1977, as amended, 7 U.S.C. § 2011, *et seq.*, provides assistance to eligible low income households to enable them "to obtain a more nutritious diet through normal channels of trade by increasing [their] food purchasing power ...." 7 U.S.C. § 2011. The Act's purposes are to combat hunger and malnutrition among those of limited means, as well as to strengthen the nation's agricultural economy through the enhancement of food marketing and distribution. *Id.*

The assistance provided under the Food Stamp Act is in the form of food stamp coupons that recipients use to purchase food from approved retail stores. These coupons are redeemable at face value by the Secretary of Agriculture through the facilities of the United States Treasury. 7 U.S.C. § 2013(a).

The Food Stamp Program is administered nationally by the Food and Nutrition Service of the Department of Agriculture ("FNS"). 7 C.F.R. § 271.3. It is administered locally by state agencies pursuant to plans of operation approved by the Secretary of Agriculture, which incorporate uniform standards of eligibility for assistance and specify the manner in which assistance will be processed. 7 U.S.C. § 2020. The state agencies are eligible to receive up to 50% or more of the costs of administering the program from the federal government. 7 U.S.C. § 2025.

Among the responsibilities of these state agencies are the certification of eligible households; the procurement, acceptance, storage, protection, control, accounting for and issuance of coupons; and the conduct of fair hearings for the determination of eligibility and entitlement to assistance. *See generally* 7 C.F.R. § 273. The Department of Social Services ("DSS") is the state agency responsible for the administration of the program in New York, and the program is implemented by social services districts throughout the State.

Under New York's plan of operation, as administered by DSS, an eligible individual is issued an Authorization to Participate ("ATP") card which can be redeemed for food coupons at authorized coupon redemption centers. The ATP bears an expiration date beyond which it cannot be used. Generally, an ATP is valid for the entire month of issuance. However, if it is issued after the 25th day of the month, it will be valid for at least twenty days thereafter, or until the end of the following month. *See* 7 C.F.R. § 274.2(e)(3).

In New York City, where the program is administered by the Human Resources Administration, special procedures have been implemented under the FNS's Rapid Access System, in an effort to reduce fraud. Pursuant to these procedures, an ATP card must be transacted initially within eight days of issuance. If a household reports that an ATP card has been lost or stolen, those eligible must wait until the expiration of the eight-day period before obtaining a duplicate. If during this time the original ATP has been redeemed fraudulently by a thief or finder, or if it has not been redeemed at all, the household will receive a duplicate. However, the household will be denied this duplicate if it is determined that its member actually redeemed the original card during the first eight days of issuance.

If an eligible household fails to redeem its ATP within the eight-day period, it can obtain an immediate replacement within the month of issuance of the original. The replacement ATP is valid until the end of the month or for twenty days thereafter if issued after the 25th day of the month. It entitles the household to the same monthly coupon allotment that could have been obtained with the original card, but it will not be issued unless the household's entitlement is confirmed and the original is surrendered.

The City and the State provide FNS with periodic reconciliation reports on forms provided by FNS that account for all redeemed ATP cards. The reports list the value of coupons issued upon acceptance of lost, stolen and expired ATP's and this information provides the basis by FNS to compute the losses of the program.

Federal regulations make state agencies strictly liable for any shortages or losses of coupons or cash that are caused by, *inter alia*, theft, embezzlement, cashier errors and natural disasters. 7 C.F.R. §§ 276.-1(a), 276.2(a), (b). State agencies are also made liable for financial losses caused by the acceptance of expired ATP cards. 7 C.F.R. § 276.2(b)(3)(i). FNS is authorized to bill state agencies for the exact amount of such losses. 7 C.F.R. § 276.2(d). In the absence of payment, FNS may recover these losses through offsets against the

federal share of administrative funds to which the state agency is otherwise entitled. 7 C.F.R. §§ 276.2(d), 277.16(c)(iii).

A state agency may seek administrative review of FNS claims by filing an appeal with the State Food Stamp Appeals Board. It may also seek judicial review of an Appeals Board determination, within thirty days of the receipt thereof, by a trial *de novo* in a District Court. 7 U.S.C. § 2023(a); 7 C.F.R. § 276.7(j). The filing of a timely appeal for administrative review automatically stays the action of FNS to collect any claim until a final determination has been issued by the Appeals Board. 7 C.F.R. § 276.7(e). The automatic stay applies to all claims except those based on a state agency's failure to comply with an order to reduce, suspend or cancel benefits. *Id.*

By letter of August 23, 1982, FNS notified DSS of the implementation of a policy of charging interest "on all debts over 30 days old which are owed to FNS by any party outside the Federal Government," including state agencies which administer the Food Stamp Program. Interest is to accrue on all claims, including those under administrative review, from the 31st day following the date of the initial billing of the claims. The rate of interest to be assessed is established quarterly in accordance with the prevailing value of funds to the Treasury, and remains constant over the life of a particular debt.

According to FNS, this policy was adopted under the authority of the Federal Claims Collection Standards, the Treasury Fiscal Requirements Manual, and a Treasury Department directive issued pursuant to these authorities.

FNS billed DSS on three occasions based on determinations that food stamps had been issued in New York to persons holding expired eight-day ATP cards. These billings were as follows:

| Claim No. | Date | Period Covered | Amount |
|---|---|---|---|
| 1–83 | 1/18/83 | 10/80—3/81 | $ 15,559.00 |
| 6–83 | 2/11/83 | 4/81—9/81 | 46,843.80 |
| 9–83 | 3/08/83 | 10/81—3/82 | 108,210.00 |
| | | TOTAL | $170,612.82 |

(The latter two amounts were subsequently revised, decreasing them to $43,428.80 and $102,844.00, respectively.)

DSS filed administrative appeals to the State Food Stamp Appeals Board pursuant to 7 C.F.R. § 276.7 with respect to each billing. The Appeals Board upheld each of the claims.

DSS has paid all claims. In addition, it has been assessed and has paid interest in the amount of $842.80 on the first claim, $4,234.31 on the second claim, and $8,913.14 on the third claim. Pursuant to the recently implemented FNS policy, interest was assessed retroactively to the 31st day following the initial billing of all the claims, even though the Appeals Board had not yet issued a final decision on DSS' appeals by that date.

Plaintiff's initial complaint in this action challenged only the first billing, No. 1–83, and was timely filed on August 8, 1983, pursuant to 7 U.S.C. § 2023(a). On September 26, 1983, DSS received notice of the Appeals Board's determination on claims Nos. 6–83 and 9–83. On November 4, 1983, over thirty days later, DSS filed an amended complaint challenging the second and third billings as well.

■ Defendants argue that this Court lacks subject matter jurisdiction to review the second and third billings because no complaint with respect to them was filed within the statutory period, and asks that the amended complaint be dismissed pursuant to Rules 12(b)(2) and 12(b)(6), F.R.Civ.P. Plaintiff contends that the action for judicial review of claims Nos. 6–83 and 9–83 was timely, since leave to amend was granted at this court's scheduling conference held on October 25, 1983. At that time, plaintiff alleges leave to amend the complaint to include the two new claims was granted with consent of defendants' counsel. There is no transcript of that conference. Usually this Court does not require attendance of a court reporter at such conferences, since most arrangements are both consensual and procedural, and to do otherwise would waste scarce resources. Plaintiff also contends that, as the amend-

ed complaint arises out of the conduct set forth in the original complaint, it relates back to the date of that pleading. Under these theories, plaintiff alleges that this Court does have proper subject matter jurisdiction.

In determining this threshold matter, we need not address the contested issue as to whether leave to file the amended complaint was granted in timely fashion with the consent of defendants' counsel at the court conference on October 25, 1983, since, in any event, the amended complaint relates back to the date of the original complaint.

Rule 15(c), F.R.Civ.P. provides that:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

The Rule operates in this case to bring the filing of the amended complaint outside the bar of any limitations period.

Plaintiff's amended complaint differs from the original in only two respects: it adds the United States as a party defendant pursuant to 7 U.S.C. § 2023(a), and it adds the undisputed factual allegations relating to the billing of claim Nos. 6–83 and 9–83 against DSS. The claims for relief set forth in the amended complaint are identical to, and arise out of the same conduct set forth in the original complaint. Both pleadings challenge defendants' assessment of liability against DSS for (a) alleged ATP reconciliation shortages in the absence of actual losses to the Food Stamp Program; and (b) late payment interest.

In light of the identity of issues and claims presented by the two pleadings, the amendment relates back to the date of the original complaint. Therefore, this Court may consider the issues contained in plaintiff's amended complaint.

Plaintiff asserts (a) that DSS is not liable to FNS for the transaction of expired eight-day ATP cards because no losses were incurred by the Food Stamp Program; and (b) that assessment of late payment interest against DSS is not authorized by common law or regulation, and contravenes the terms and policy of the Food Stamp Act and regulations.

Defendants assert (a) that DSS is strictly liable for food stamp coupons issued pursuant to expired ATP cards and that financial loss need not be proved; and (b) that under a creditor's common law rights, FNS properly billed DSS for late payment interest.

■ Both claims present issues of first impression in this jurisdiction. With respect to the first issue, plaintiff's challenge to defendants' assessment of strict liability against DSS for redemption of expired ATP cards regardless of any proof of financial loss to the Food Stamp Program, this Court must agree with plaintiff's contention that in the absence of any such proven loss, DSS is not liable to FNS.

Defendants do not dispute that FNS has never demonstrated that actual financial losses to the Food Stamp Program were created by the exercise of expired eight-day ATP's in New York City. Rather, they assert that "financial loss is presumed from the improper issuance of food stamp coupons; it need not be proved," and that consequently, DSS "is liable for food coupons issued pursuant to expired ATP cards without regard to whether any actual financial loss can be proved." These contentions disregard the language of the Food Stamp Act and regulations.

The Food Stamp Act requires that state agencies administering the program, such as DSS, "shall be strictly liable to the Secretary *for any financial losses* involved in the acceptance, storage and issuance of coupons. . . ." 7 U.S.C. § 2016(f) (emphasis added). The regulations also provide that "any shortages or losses of coupons or cash shall be a strict State agency liability and the State agency shall pay to FNS, upon demand, the amount of the missing coupons or cash regardless of the circumstances of the loss." 7 C.F.R. § 276.1(a).

In addition to their responsibility for actual coupon shortages and losses, state agencies are liable for unauthorized issuances, including "the acceptance of expired ATP cards." 7 C.F.R. § 276.2(b)(3)(i). Any doubt that this liability is based on other than actual losses is laid to rest by 7 C.F.R. § 276.2(d), which provides that "State agencies shall be billed for the exact amounts of losses specified in this section."

The statute and the regulations distinguish clearly between the *standard* of liability to which a state agency is held, strict liability, and the *measure* of that liability, actual financial loss. The standard is expressed as liability "regardless of the circumstances of the loss," while the measure is unambiguously stated as "the amount of missing coupons or cash." 7 C.F.R. § 276.-1(a).

The cases relied on by defendants recognize this distinction, and do not support their argument that losses need not be proved. Thus, in *Hettleman v. Bergland*, 642 F.2d 63 (4th Cir.1981), the court upheld the validity of regulations imposing strict liability on the Maryland Department of Human Resources for an *undisputed loss* of $113,962 in *stolen* food coupons. The court did not suggest that a state agency could be held liable, strictly or otherwise, for unproven losses.

Similarly, in *State of Louisiana Department of Health and Human Services v. Block*, 694 F.2d 430 (5th Cir.1982), and *State of Missouri v. Block*, 690 F.2d 139 (8th Cir.1982), the courts concluded that the risk of loss of stolen coupons must be borne by state agencies under the strict liability standard imposed by the food stamp regulations. And, in *Century Bank of Gainesville v. United States*, 634 F.2d 554 (Ct.Cl.1980), the court held that the United States was not obligated to pay for food coupons that were stolen while in the custody of a bank, and that the bank had to bear the consequent loss despite the absence of negligence on its part.

Each of these cases present a significant fact lacking in the instant case—a loss of coupons. The exercise of expired eight-day ATP cards does not entail a financial loss to the program because the household receives no more than the monthly allotment of coupons to which it would otherwise be entitled. The eight-day deadline is simply a special feature of the Rapid Access System used in New York City to guard against the possibility of duplicate issuance. It does not signal the forfeiture of benefits, as does the thirty-day expiration date employed elsewhere in the State.

The regulations imposing strict liability on state agencies may dispense with the need for defendants to establish agency negligence when coupon losses or shortages occur. However, they in no way eliminate the need for defendants to prove the existence of such losses or shortages as a prerequisite to a valid claim for payment. Accordingly, this portion of plaintiff's amended complaint states a claim upon which relief can be granted.

■ In addition, plaintiff challenges FNS' assessment of late payment interest charges. DSS contends that such assessment of interest against a state agency is not authorized by common law or regulation and contravenes the terms and policy of the Food Stamp Act and regulations. We agree.

DSS has paid $13,990 in interest on the three challenged claims pursuant to FNS' policy of charging state agencies late payment interest penalties from the 31st day following the initial billing of claims. Interest is assessed by FNS for periods during which a state agency may seek administrative and judicial review of such claims. According to a notice to DSS dated August 23, 1982, FNS implemented this policy under the authority of the Federal Claims Collection Standards, the Treasury Fiscal Requirements Manual, and a May 17, 1982 Treasury "directive." State agencies had never before been liable for interest, and there is no provision for interest in the Food Stamp Act.

Defendants recognize that the recently amended Federal Claims Collection Act expressly excludes state agencies from the

definition of "persons" against whom late payment interest can be assessed. *See* 31 U.S.C. §§ 3701(c), 3717. Nevertheless, they argue that the United States has a common law right to interest that is not abrogated by this statute. They also maintain that the assessment of interest against DSS is authorized by regulation. There is no legal basis for either of these contentions.

The terms and conditions upon which state agencies participate in the Food Stamp Program were clearly articulated by Congress, and cannot be expanded by administrative action. In the administration of cooperative federal-state programs, state governments assume only those obligations that are explicitly imposed by statute. As the Supreme Court has stated in *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981):

> "[L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract." [Citations omitted]. There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. [Citations omitted]. By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation."

*See also Bell v. New Jersey and Pennsylvania,* 461 U.S. 773, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983) (federal government has the right to recover misused education funds because of express statutory authorization); *Hendrick Hudson Dist. Bd. of Ed. v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (Education for All Handicapped Children's Act does not require

state to provide a sign-language interpreter for a deaf child).

The "contractual" relationship into which states and the federal government enter under the Food Stamp Program is thus exclusively a creature of the Food Stamp Act and the regulations and plans of operation authorized thereunder. In the absence of an unambiguous authorization by Congress, FNS' policy of assessing late payment interest against state agencies must be deemed invalid. This is especially so in light of the fact that the Federal Claims Collection Act, which set forth congressional policy for the collection and settlement of debts by federal agencies, was expressly made inapplicable to claims against state agencies by the Debt Collection Act of 1982.

The lack of authority for FNS' policy is also evidenced by the fact that the assessment of interest against states in other instances is expressly authorized by statute. For example, the Medicaid Act makes a state liable for retroactive interest on disallowed matching funds that are retained by the state pending a final determination that proves favorable to the federal government. 42 U.S.C. § 1396b(d)(5). Similarly, the Social Security Act makes states liable for interest on late payments of FICA taxes under contracts for the provision of Social Security benefits for their employees. 42 U.S.C. § 418(j). These statutes also prescribe the rates of interest to be applied. The absence from the Food Stamp Act of a similar provision precludes the assessment of interest against DSS in this case. Had Congress intended to subject state agencies to late payment interest penalties under the Food Stamp Program, it would have done so explicitly.

Instead, the Food Stamp Act and regulations prescribe other, exclusive means of collecting on claims against state agencies, as well as the exclusive measure of recovery on those claims. Thus, as noted above, state agencies are liable to pay only the actual losses created by coupon shortages and unauthorized issuances, including the

acceptance of expired ATP's. 7 U.S.C. § 2016(f); 7 C.F.R. §§ 276.1(a), 276.-2(b)(3)(i). They can be billed by FNS for no more than the exact amounts of losses incurred. 7 C.F.R. § 276.2(d). Unpaid claims for these losses can be recovered through offsets against the federal share of administrative funds to which the state agency is otherwise entitled "... if the State agency has declined or exhausted its appeal rights ...." 7 U.S.C. § 2022(a); 7 C.F.R. §§ 276.2(a), 277.16(c)(iii). And the filing of a timely appeal for administrative review automatically stays the action of FNS to collect any claim (other than one for noncompliance with an order to reduce, suspend or cancel benefits) until a final determination has been issued by the Appeals Board. 7 C.F.R. § 276.7(e). Nothing in the statute or regulations authorizes the assessment of interest on claims against state agencies, and their exclusivity renders common law principles irrelevant.

The cases cited by defendants are not persuasive. They involve only the right to recover interest from a private party as an incident of damages for breach of a commercial contract. They were decided prior to the enactment of the Debt Collection Act of 1982. The cases in no way suggest that the United States is entitled to collect interest from a state agency on claims governed by a statute that does not authorize it to do so. To the contrary, they recognize that federal courts will fashion the measure of interest due the United States as an element of contractual damages only in the absence of an applicable federal statute. *Royal Indemnity Co. v. United States*, 313 U.S. 289, 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361 (1941); *United States v. Seaboard Surety Company*, 339 F.2d 1, 3 (2d Cir. 1964). In *Rosden v. Leuthold*, 274 F.2d 747 (D.C.Cir.1960), also cited by defendants, the interest awarded was specifically authorized by the District of Columbia Code.

The statutory and regulatory provisions cited above make clear that claims do not have to be paid, and cannot be collected, until a state agency foregoes an appeal or receives a final determination from the Appeals Board. They lead to the conclusion that FNS is not empowered to impose late payment interest penalties on state agencies, particularly for any period of time prior to the state agency's waiver or exhaustion of an administrative appeal. Until an Appeals Board decision is issued, or an appeal is declined, a claim against a state agency is not final, and the United States is not entitled to recover either the disputed amount or interest thereon. For this reason, defendants' reliance on cases which have allowed the recovery of interest pending administrative or judicial review in other circumstances is misplaced.

Defendants' argument that the assessment of interest is a valid means of discouraging frivolous appeals and preventing windfalls to state agencies ignores the fact that the statute and regulations guarantee the right to appeal, and preclude collection of claims pending administrative review. Defendants' retroactive assessment of interest for a period during which an appeal is pending penalizes the state agency for not paying FNS on a claim for which it has not been finally determined to be liable. It also penalizes the state agency for delays in the issuance of an Appeals Board decision, which prolong the accrual of interest through no fault of the agency.

Defendants are also mistaken in their contention that the assessment of interest against state agencies is authorized by the Federal Claims Collection Standards, which have been adopted by the Department of Agriculture and provide that "in the absence of a different rule prescribed by statute, contract or regulation, interest should be charged on delinquent debts and debts being paid in installments in conformity with the Treasury Fiscal Requirements Manual." 4 C.F.R. § 102.12. As defendants recognize, the Federal Claims Collection Act prescribes such a different rule with respect to state agencies, by expressly excluding them from the definition of "persons" against whom interest may be charged. 31 U.S.C. §§ 3701(c), 3717. The Standards cannot be read to permit the collection of interest against state agencies

when the Act under which they were promulgated expressly precludes it.

Moreover, the Treasury Fiscal Requirements Manual authorizes the collection of late payment interest only on overdue debts owed by organizations, businesses and individuals. It does not cover debts owed by state agencies. T.F.R.M. § 8020.-20. Thus, even if the Federal Claims Collection Standards were otherwise relevant, they would have no bearing on this case because of the inapplicability of the Manual.

The only pertinent regulations are those which limit FNS to the recovery of the exact amount of unpaid losses by offsetting those losses against the federal share of administrative funds. There is simply no legal authority for FNS' policy of assessing interest against state agencies.

Accordingly, for the aforementioned reasons plaintiff's motion for summary judgment is granted and defendants' motion is denied.

Settle a judgment on five (5) days notice to be received by the Court for signature on or prior to May 31, 1984.

So Ordered.