**STATE OF ARKANSAS, By its Director of the Dept. of Human Services, Ray SCOTT, Appellant/Cross-Appellee,**

v.

**John BLOCK, In his official capacity as Secretary of the U.S. Department of Agriculture, Appellee/Cross-Appellant.**

Nos. 86–2018, 86–2060.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1987.

Decided Aug. 4, 1987.
Rehearing and Rehearing En Banc Denied Nov. 10, 1987.

Carolyn Parham, Little Rock, Ark., for appellant/cross-appellee.

Bruce G. Forrest, Washington, D.C., for appellee/cross-appellant.

1. The Honorable Elsijane Trimble Roy, United States District Judge for the Eastern District of Arkansas.

Before McMILLIAN, FAGG and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

The State of Arkansas appeals from a final judgment entered in the District Court[1] for the Eastern District of Arkansas in favor of the Secretary of the United States Department of Agriculture (the Secretary) in this challenge to regulations governing liability for mail loss of food stamp coupons. For reversal, Arkansas contends the district court erred in not finding the regulations arbitrary and capricious. The Secretary cross-appeals, challenging the district court's determination that the Secretary may not assess interest on penalties imposed on Arkansas under the regulations. For the reasons discussed below, we affirm the judgment of the district court.

*Background*

The food stamp program is jointly administered by the federal government through the United States Department of Agriculture (the Department) and by participating states. The Department pays for and provides food stamps to participating states and the states in turn transmit the food stamps to qualified recipients. States generally distribute food stamps to recipients through the mail. When a recipient reports that food stamps placed in the mail have been lost, state agencies will replace the coupons. 7 C.F.R. § 274.3(c)(1). Food stamps are negotiable. *See* 7 U.S.C. § 2013. Thus, if the "lost" coupons are in fact used, the federal government pays for both the original and the replacement coupons.

In 1981, Congress enacted 7 U.S.C. § 2016(f) to require participating states to share in the cost of replacing food stamps lost in the mail. The Secretary promulgated final regulations to implement the statute, codified at 7 C.F.R. § 274.3(c) (the regulations). Under the regulations, if a state's mail loss rate exceeds 0.5 percent, a penalty is assessed.[2] 7 C.F.R. § 274.-

2. The 0.5 percent penalty level applies to areas with a mail issuance of $300,000 or more per quarter. 7 C.F.R. § 274.3(c)(4)(i).

3(c)(4)(i). The stated goal of the penalty is to give states "a significant and realistic incentive to reduce mail losses, while taking care not to discourage mail issuance use where it is proving cost effective and appropriate." 47 Fed.Reg. 50,682 (1982).

The regulations also establish "administrative divisions" for reporting data and calculating a state's mail loss rate. 7 C.F.R. § 274.3(c)(4)(v). In most states, including Arkansas, the Secretary has designated the county as the reporting unit. Arkansas requested that its mail loss rate be reported on the basis of "a management project area" (a cluster of counties), but the Secretary refused. At oral argument, the Secretary informed the court that ten states are permitted to report mail loss data on the basis of a reporting unit other than a county.

The Secretary has assessed mail loss penalties against Arkansas under the regulations for a total of $36,751. With each assessment, the Secretary claimed interest on the unpaid penalty.

Arkansas filed this action in district court challenging the regulations on the grounds, among others, that the 0.5 percent penalty level was arbitrary and capricious and that the Secretary's refusal to accept Arkansas's preferred designation of a reporting unit resulted in unfair treatment and was arbitrary and capricious. Arkansas also challenged the lawfulness of the assessment of interest on unpaid penalties. Arkansas and the Secretary filed cross-motions for summary judgment. The district court ruled that neither the 0.5 percent penalty level nor the county-based reporting unit for Arkansas was arbitrary and capricious. *Arkansas v. Block*, No. LR–C–84–972, slip op. at 12 (E.D.Ark. June 30, 1986) (memorandum opinion). The district court also held that the Secretary could not assess interest on Arkansas' unpaid penalties. *Id.* These appeals followed.

*Discussion*

We consider first Arkansas' challenge to the regulations. An agency regulation will

be set aside if it is arbitrary or capricious. 5 U.S.C. § 706(2)(A). Under this standard, a regulation will be upheld if it is "reasonably related to the purposes of the enabling legislation." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973).

Title 7 U.S.C. § 2016(f) provides that states "shall be liable to the Secretary to the extent prescribed in the regulations promulgated by the Secretary." In enacting the statute, Congress gave the Secretary broad discretion to establish a mechanism by which the states will share in the cost of replacing food stamps lost in the mail. Arkansas contends that by penalizing states with loss rates above 0.5 percent, the regulations promulgated to implement the statute are arbitrary and capricious because the Secretary has no empirical evidence that this mail loss rate is either achievable or appropriate. Arkansas claims the statutory purpose of § 2016(f) is not to share costs but to penalize states with unusually high mail loss rates. Thus, Arkansas asserts, the penalty level should be set at the national average rate for mail losses.[3]

The Secretary responds that if Congress had found past mail loss rates acceptable, it would not have enacted § 2016(f). The Secretary asserts that the purpose of the statute is to reduce the mail loss rate or, at least, to shift some portion of the costs for mail loss to the states. The Secretary argues that a 0.5 percent penalty level, which is somewhat below the national average loss rate, gives states an incentive to improve mail delivery of food stamps. And, even if states cannot achieve a 0.5 percent loss rate, the Secretary continues, the regulations nonetheless fulfill the statutory purpose of establishing a mechanism for sharing costs with the states. The Secretary thus concludes that a 0.5 percent penalty level is reasonably related to the statutory purposes. The Secretary finally argues that § 2016(f) grants him broad discretion and his interpretation is thus entitled to deference so long as it reasonably accords with the statutory purposes.

3. The average mail loss rate nationwide in 1981, the year before the regulations were promulgated, was 0.86 percent. 47 Fed.Reg. 50,682 (1982).

The district court found that the statutory purpose of § 2016(f) was to lower the federal government's costs for food stamp replacement by making states financially accountable for mail distribution. Memorandum opinion at 12. In light of this purpose, the district court concluded that the 0.5 percent penalty level was reasonably related to the purpose of the enabling legislation and therefore was not arbitrary and capricious. *Id.* We agree. Whether states can reduce their mail loss rate to the 0.5 percent penalty level is not relevant to the cost-sharing purpose of the statute. We hold therefore that the district court did not err in concluding that the 0.5 percent penalty level set out in the regulations is not arbitrary and capricious.

Arkansas also challenges the Secretary's designation of the county as the reporting unit for purposes of calculating the state's mail loss rate under the regulations.[4] The regulations provide, in relevant part:

Where the State agency reports mail issuance loss data on Statewide losses only, the State agency shall work in consultation with [the Secretary] to identify a particular administrative division below that of the State agency that will permit reporting and computation of mail issuance losses and liability assessment. [The Secretary] reserves the right to make the final determination on reporting requirements and on administrative divisions within the State for the purpose of determining and assessing liability for mail issuance losses.

7 C.F.R. § 274.3(c)(4)(v). Arkansas contends the Secretary acted unfairly, hence arbitrarily and capriciously, in not permitting Arkansas to designate a non-county reporting unit, when the Secretary has allowed ten other states to do so.

The Secretary responds that designating different reporting units based on different conditions among states that participate in the food stamp program is not arbitrary and capricious.[5] The Secretary also argues that the regulations give him the discretionary authority to designate any reporting unit that is administratively preferable to the Department.

The district court held that the Secretary's designation of the county as the reporting unit for Arkansas was not arbitrary and capricious. Memorandum opinion at 12. The district court reasoned that the provision for smaller reporting areas in the regulations was reasonably related to the statutory purpose of § 2016(f) because it helped the Department identify and remedy mail distribution problems. *Id.* We agree. Further, the regulations give the Secretary broad discretion in defining the appropriate reporting unit. Arkansas has not argued that a county-based reporting system is *per se* unreasonable and it is our view that establishing a method for reporting and analyzing program data is the kind of administrative decision best left to the expertise and competence of the Department. We hold therefore that the district court did not err in concluding that the designation of the county as Arkansas' reporting unit under the regulations was not arbitrary and capricious.

**4.** The Secretary in turn challenges Arkansas' standing to raise this claim. The Secretary contends the state cannot show it has suffered any actual injury from the decision. Under *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), standing requires (1) actual or threatened injury, (2) that can be traced to an agency decision, and (3) that will be redressed by a favorable decision. Arkansas argues that if it is permitted to report mail losses on a "cluster of counties" basis, the state could group high-loss counties with low-loss counties and end up owing the Secretary less money in penalties. Arkansas claims its higher mail loss penalties are the direct result of the Secretary's decision about the method for calculating mail losses. We conclude Arkansas has demonstrated actual injury and, consequently, has standing to raise this claim.

**5.** The Secretary explained at oral argument that ten states have been permitted to report mail losses on a non-county basis because (1) these states reported on a non-county basis before the regulations came into effect, or (2) the demographic and geographical features of these states (sparse population, rural population, few urban centers) make non-county reporting arrangements administratively convenient for the Department.

The Secretary contends on cross-appeal that the district court erred in holding that the Department could not assess interest against Arkansas on unpaid penalties. For each penalty imposed on Arkansas under the regulations, the Secretary assessed interest from a due date established for payment of the penalty. The district court held that there was no authority under law for the federal government to assess interest against a state for unpaid penalties imposed under the food stamp regulations. *Id.* at 13.

The Debt Collection Act of 1982, 31 U.S.C. § 3717(a) (the Debt Collection Act), requires that interest be assessed on all debts owed to the United States that are not promptly paid. The Debt Collection Act, however, applies only to debts owed by a "person," and "person" does not include "an agency of the United States Government, of a State government, or of a unit of general local government." *Id.* at § 3701(c).

Notwithstanding this statutory language, the Secretary argues that in passing the Debt Collection Act, Congress did not intend to abrogate the federal government's pre-existing common law right to collect interest on a state debt in certain discretionary circumstances.[6] We cannot refer to the legislative history of the Debt Collection Act to ascertain congressional intent in passing the statute. The provision exempting states was added to the bill on the Senate floor; no legislative history on this provision is thus available.

■ Absent legislative history to the contrary, we must assume that the congressional purpose is expressed by the plain meaning of the statutory language and the language must be considered conclusive. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). By enacting a statute that explicitly denies the federal government authority to charge interest on debts owed it by the states, Congress abrogated any pre-existing common law right. Two other appeals courts have considered this issue and have also rejected the Secretary's position based on the plain meaning of the statutory language. *Pennsylvania v. United States*, 781 F.2d 334 (3d Cir. 1986); *Perales v. United States*, 598 F.Supp. 19 (S.D.N.Y.), aff'd, 751 F.2d 95 (2d Cir.1984) (per curiam).[7] We hold therefore that the district court did not err in concluding that there was no authority under law for interest assessment on Arkansas' unpaid penalties.

Accordingly, the judgment of the district court is affirmed. The cross-appeal is denied.

---

6. Before the passage of the Debt Collection Act, the United States had a common law right to assess interest on debts owed it by states in certain circumstances. *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947) (circumstances depend on the purpose behind the statute under which the debt arises and the relative equities).

7. In denying state liability for interest, the *Perales* district court relied on the Debt Collection Act and also on the decision in *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (*Pennhurst*). In *Pennhurst*, the Supreme Court held that statutory imposition of requirements for state participation in federal programs must be explicit. "[Where] Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.... [B]y insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* at 17, 101 S.Ct. at 1539. The district court in *Perales* reasoned that if Congress had intended to subject states to late payment interest penalties under the food stamp program, it would have made express statutory provision for such assessment, as Congress has done under other cooperative federal-state public benefits programs. 598 F.Supp. at 24. This alternative rationale also supports our decision in the present case.

In *United States v. West Virginia*, 764 F.2d 1028 (4th Cir.1985), aff'd, —— U.S. ——, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987), the Fourth Circuit upheld imposition of interest on a state debt. The appeals court did not refer to the Debt Collection Act in its decision and relied instead on common law principles. The state debt at issue in that case, however, was incurred before passage of the Debt Collection Act. The Debt Collection Act does not apply to claims arising under contracts entered into before October 25, 1982. 31 U.S.C. § 3717(g)(2). *United States v. West Virginia* may thus be distinguished from the case now before us.