Wilson RILES, in his capacity as Superintendent of Public Instruction of the State of California; the State of California, a Sovereign State, By and Through the California State Department of Education, a State Agency, Hayward Unified School District, a State Agency, Plaintiff-Appellees,

v.

William J. BENNETT, in his capacity as Secretary of the United States Department of Education, Defendant-Appellant.

No. 85–2749.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1987.

Decided Nov. 2, 1987.

Robert K. Rasmussen, Washington, D.C., for defendant-appellant.

Peter G. DeMauro and Dennis Eckhart, Sacramento, Cal., for plaintiffs-appellees.

Before BROWNING, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

PER CURIAM:

The Secretary of the United States Department of Education appeals the denial of prejudgment interest on an award of $108,701 for Title I grants misspent by the State of California. The district court denied interest because it read *Pennhurst State School and Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), as requiring explicit statutory authorization for an interest award. We reverse and remand.

## I

Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 241a *et seq.*, provided for grants to states to improve education for disadvantaged children conditioned on compliance with various statutory and regulatory requirements.[1] Title I funds not spent on complying programs must be repaid.

The Secretary determined that California had not adhered to the applicable conditions in spending funds granted for use by the Hayward Unified School District between 1970 and 1972. The administrative process within the Department concluded in 1978 with a determination by the Secretary of Education that the State had misspent $108,701. The State filed a petition for review in this court which was dismissed for lack of jurisdiction. The State did not file a petition in what was then the proper forum, a United States District Court. *See Bell v. New Jersey*, 461 U.S. 773, 777 n. 3, 103 S.Ct. 2187, 2190 n. 3, 76 L.Ed.2d 312 (1983).[2]

On March 17, 1981, the Secretary demanded repayment, stating interest would be charged if payment was not received in 30 days. The State did not respond. A second demand letter was also ignored. The Secretary threatened to offset the debt against current-year grant funds. The State then filed a complaint for injunctive and declaratory relief challenging the Secretary's determination. The Secretary counterclaimed for the amount of the misspent funds, plus interest from April 16, 1981.

The district court granted the Secretary's motion for summary judgment on the merits, holding that the administrative decision that the State owed $108,701 was final and irrevocable, but denied prejudgment interest. The Secretary appealed; the State did not.

We held this case awaiting *West Virginia v. United States*, —— U.S. ——, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987). In the *West Virginia* decision, the Supreme Court reaffirmed "the longstanding rule that parties owing debts to the Federal Government must pay prejudgment interest where the underlying claim is a contractual obligation to pay money." 107 S.Ct. at 706 (citation omitted).

The State emphasizes the fact that the underlying claim in this case is not an "ordinary commercial contractual arrangement," *id.*, but rather arises from a federal grant program reflecting "the judgment of Congress concerning desirable public policy," and intervening "multiple levels of government in a cooperative effort to use federal funds to support compensatory education for disadvantaged children." *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 669, 105 S.Ct. 1544, 1552, 84 L.Ed.2d 590 (1985). The State appears to derive no more from this fact than that the effect upon the realization of Congress' purposes must be considered in determining whether an award of prejudgment interest is appropriate. This much is conceded by the Secretary, and clearly required by the statement in *West Virginia* that "before applying the usual rule regarding prejudgment interest as against a private party to a State, a federal court should consider the interests of the two governments involved." 107 S.Ct. at 706 (citation omitted).

1. The Title I statute subsequently was amended and reorganized in the Education Amendments of 1978. *See* Pub.L. No. 95–561, 20 U.S.C. § 2701 *et seq.* As of July 1, 1982, the Title I program was superseded by Subchapter 1 of the Education Consolidation and Improvement Act of 1981. *See* Pub.L. No. 97–35, 20 U.S.C. § 3801 *et seq.*

2. Congress subsequently changed the forum for review to the Courts of Appeals. *Id.*

■ The Secretary goes further, however, arguing that *West Virginia* requires an award of prejudgment interest unless "state policy *compels* any deviation" from the general rule allowing such interest on debts due the United States. *Id.* (emphasis added). We need not decide whether the balance should be weighted in favor of the allowance of interest as the Secretary argues. We are satisfied that an even-handed balancing of state and federal interests required such an allowance in this case.

The federal interests supporting the collection of prejudgment interest are important ones. Only an award of prejudgment interest will fully compensate the United States for the funds wrongfully withheld by the State. *Id.* Such an award will serve the purposes of Congress reflected in Title I by insuring that moneys appropriated for use under Title I are devoted to service of the intended beneficiaries—disadvantaged children—rather than to the relief of California state taxpayers.

The State argues that "[s]uch a rule would tend to discourage states from participating in federal grant programs, since the states would be subjecting themselves to a tremendous risk in accepting funds." The State's argument assumes that a state deciding whether to accept a grant under Title I will consider itself likely to violate the grant's terms. There is no support for such an assumption. There is no evidence that such violations of grant conditions under Title I are frequent or that the sums involved are significant in relation to the very large amounts available to the states under Title I.[3]

In contrast to the substantial federal interests in receiving prejudgment interest, the interests of the State in avoiding such interest are minimal. The Supreme Court rejected as irrelevant the interest any state may have "in not paying any more than it has to." *West Virginia*, 107 S.Ct. at 707. The State's contention that it acted "in good faith" reflects no state interest that

would be served by avoiding payment of prejudgment interest. Moreover, the State is not without fault. The Secretary seeks interest only from the date of the demand letter sent two-and-one-half years after the Secretary's determination of the amount due. The State did nothing to pay the debt, or to challenge it, until the Secretary threatened to offset the debt from current-year appropriations.

## II

■ *Pennhurst* does not bar prejudgment interest in this case.

*Pennhurst* held that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." 451 U.S. at 17, 101 S.Ct. at 1540 (footnote omitted). The Court reasoned as follows:

> [L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." ... There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it.

*Id.* (citations omitted).

The State argues that *Pennhurst* bars the recovery of prejudgment interest because Congress has not provided "unambiguously," or indeed at all, for the collection of interest on Title I grants misapplied by a state.

It is clear from the Supreme Court's subsequent decision in *Bell v. New Jersey*, 461 U.S. 773, 103 S.Ct. 2187, 76 L.Ed.2d 312 (1983) that *Pennhurst* is not applicable to the State's liability for prejudgment interest. *Bell v. New Jersey* held that states

---

**3.** Title I was the largest federal elementary and secondary education funding program. (Appellant's Opening Brief at 11 n. 6.) As noted in *Bennett v. Kentucky*, 470 U.S. at 667, 105 S.Ct. at 1551: "Title I grew from an annual appropriation of $959 million in 1966 to more than $3 billion by 1981, and assisted compensatory education programs in every State and in more than 14,000 school districts."

could be required to repay the Secretary for misspent Title I funds. New Jersey argued that *Pennhurst* required that Congress state "unambiguously" that a state was obligated to repay misspent funds, and the statute contained no such statement. The Court held *Pennhurst* inapplicable:

> *Pennhurst* arose in the context of imposing an unexpected condition for compliance—a new obligation for participating States—while here our concern is with the remedies available against a noncomplying State.

> 461 U.S. at 790 n. 17, 103 S.Ct. at 2197 n. 17.

Our decision in *California Tribal Chairman's Ass'n v. United States Dept. of Labor*, 730 F.2d 1289, 1291–92 (9th Cir. 1984) is to the same effect.

Since prejudgment interest is part of "the remedies available against a noncomplying State," rather than an additional condition to the grant, *Bell v. New Jersey* and *California Tribal* are dispositive of this case.

*Perales v. United States*, 751 F.2d 95 (2d Cir.1984), *aff'g* 598 F.Supp. 19 (S.D.N.Y.), and *Arkansas v. Block*, 825 F.2d 1254, 1258 n. 7 (8th Cir.1987), relied upon by the State, appear to be distinguishable,[4] but in any event our decision here is controlled by the Supreme Court's reading of *Pennhurst* in *Bell v. New Jersey*, followed by this court in *California Tribal*.

### III

The State conceded at oral argument that the Debt Collection Act, 31 U.S.C. § 3701 *et seq.*, is inapplicable since the Act does not apply to a claim under a contract executed before October 25, 1982. 31

---

[4]. The Supreme Court has emphasized that decisions to award or deny interest on statutory obligations rest on "an appraisal of the congressional purpose in imposing them ..." *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947). *Perales* relies heavily on the provisions of the Food Stamp Act, especially those limiting the federal agency's right to collect losses before appeals are exhausted. *See* 598 F.Supp. at 24–26. In *Perales* and *Arkansas* the federal agency sought to impose interest only 30 days after the state had been notified

U.S.C. § 3717(g)(2). *See West Virginia*, 107 S.Ct. at 707 n. 6.

The summary judgment against the Secretary is reversed and the case remanded to the district court to determine the prejudgment interest owed by the State.

that funds had been misspent, and before administrative appeals had been exhausted. Here, no effort was made to collect interest for the period during which the administrative process was being pursued. Indeed, the Secretary did not seek interest for two-and-one-half years after notice of the final determination. The results in *Perales* and *Arkansas* are better understood as applications of the common law balancing test where federal interests were outweighed by those of the state.