**FLORIDA DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 89–3015.

United States Court of Appeals, Eleventh Circuit.

Feb. 9, 1990.

As Amended March 15, 1990.

David J. Busch, Tallahassee, Fla., for petitioner.

Vincent C. Costantino, Office of the Solicitor, U.S. Dept. of Labor, Allen H. Feldman, Edward D. Sieger, Washington, D.C., for respondent.

Before TJOFLAT, Chief Judge, JOHNSON and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This case comes to us on review of the Secretary of Labor's final decision and order requiring the State of Florida Department of Labor and Employment Security ("FDOLES") to repay certain costs incurred by FDOLES's subgrantees of a grant given to FDOLES by the U.S. Department of Labor ("DOL") pursuant to the Comprehensive Employment and Training Act ("CETA").[1] The only issue on appeal is whether the Secretary was precluded by the Debt Collection Act of 1982[2] from requiring FDOLES to pay prejudgment interest. Because we find that the provisions of the Debt Collection Act are not applicable under the facts of this case, we affirm the Secretary's imposition of prejudgment interest.

## I. BACKGROUND

Between October 1, 1980 and June 30, 1982, FDOLES received approximately $27,259,029 in CETA funds. A May 24, 1984 audit of FDOLES and FDOLES's subgrantees' records questioned $327,598 in expenditures. A grant officer reviewed the audit and issued an initial determination disallowing $145,460 of the questioned costs. This determination informed FDOLES that DOL considered $55,801 of the disallowed total to be owed to DOL and noted that DOL would charge interest on disallowed costs beginning 30 days after the grant officer's final determination.

In response to the grant officer's initial determination, FDOLES submitted documentation for some of the disallowed costs and requested waiver of repayment. *See* 20 C.F.R. § 676.88(c). Upon consideration

---

1. Pub.L. No. 93–203, §§ 1 *et seq.*, 87 Stat. 839 (1974), *as amended by* Pub.L. No. 95–524, §§ 1 *et seq.*, 92 Stat. 1909 (1978) (repealed 1982). CETA, as amended, was repealed by § 184 of the Job Training Partnership Act, 29 U.S.C. §§ 1501 *et seq.* Under the transitional provisions of that Act, pending cases continue to be adjudicated under CETA. 29 U.S.C. § 1591(e).

2. Pub.L. No. 97–365, 96 Stat. 1749 (1982).

of the FDOLES submission, the grant officer made a final determination in which he reduced the disallowed costs to $104,096, and ordered FDOLES to repay $14,437 with interest.

FDOLES requested an ALJ hearing to reconsider the grant officer's determination. At that hearing, FDOLES submitted evidence that it had collected a portion of its debt from its subrecipients of the federal CETA grant, and it renewed its arguments for a waiver of repayment.

The ALJ rejected the request for a waiver of repayment, reasoning that the disallowed costs resulted from poor documentation of records and that repayment was necessary to maintain an adequate incentive for recipients to keep proper records. The ALJ, however, reversed the grant officer's assessment of interest on the disallowed costs, determining that the Labor Department had not provided any authority for an assessment of interest against a state government.

The grant officer appealed the ALJ's reversal of the interest assessment to the Secretary. The Secretary determined that DOL possessed a common law right to impose prejudgment interest on a defaulted contractual debt owed by a state and rejected FDOLES's argument that the Debt Collection Act of 1982 abrogated the federal government's common law right to recover interest on debts owed by states. In so concluding, the Secretary rejected the contrary holdings of three federal circuit courts of appeals, *see Arkansas v. Block,* 825 F.2d 1254, 1258 (8th Cir.1987); *Pennsylvania Dep't of Public Welfare v. United States,* 781 F.2d 334, 341–42 (3d Cir. 1986); *Perales v. United States,* 751 F.2d 95 (2d Cir.1984) (per curiam), *aff'g* 598 F.Supp. 19 (S.D.N.Y.1984), and instead relied upon an unpublished opinion from the Sixth Circuit. *County of St. Clair v. United States Dep't of Labor,* 754 F.2d 375 (6th Cir.1984) (table) (unpublished opinion available on LEXIS).

This appeal of the assessment of interest followed.[3]

3. *See* 29 U.S.C. § 817(a) (Supp.V 1981) (re-

## II. DISCUSSION

FDOLES argues on appeal that the Debt Collection Act of 1982 abrogates the federal government's common law right of collecting interest on a debt owed by a state governmental agency. In making this argument, FDOLES relies upon two provisions of the Act, 31 U.S.C. §§ 3717(a)(1), 3701(c). Section 3717(a)(1) provides that:

> The head of an executive or legislative agency shall charge a minimum annual rate of interest on an outstanding debt on a United States Government claim owed by a person that is equal to the average investment rate for the Treasury tax and loan accounts for the 12–month period ending on September 30 of each year....

Because pursuant to § 3701(c) an agency of a state government is not considered a "person" under § 3717, FDOLES contends that the federal government cannot impose a prejudgment assessment of interest against it. *Accord Arkansas v. Block,* 825 F.2d at 1258; *Pennsylvania Dep't of Public Welfare v. United States,* 781 F.2d at 341–42; *Perales v. United States,* 598 F.Supp. at 25–26.

The DOL defends the Secretary's conclusion, arguing variously that: (1) the Debt Collection Act, by its very terms, does not apply to this case; and (2) even if the Debt Collection Act does apply to this case, it does not abrogate DOL's right (both under the statute and under common law) to assess prejudgment interest in this case.

### A.

DOL's first contention, that the Act is not applicable in this case, was raised for the first time in this court. As a general rule in administrative law cases, a reviewing court may not affirm an agency decision on grounds not addressed by the agency, but, rather, will remand for the agency to address the issue in the first instance. *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). "The effect of this rule is 'that a reviewing court, in dealing with a determination or judgment which an agency alone

pealed).

is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.'" *NLRB v. Episcopal Community of St. Petersburg*, 726 F.2d 1537, 1540 (11th Cir.1984) (quoting K. Davis, *Administrative Law Treatise*, § 14.29 (2d ed. 1980)). In other words, courts are not entitled to substitute their judgment or determinations of proper policy for those of an administrative agency. If the agency has misapplied the law, its order cannot stand—even if the reviewing court believes that the agency either would reinstate its order under a different theory or would reach the same decision under the proper rule of law. *Chenery Corp.*, 318 U.S. at 94, 63 S.Ct. at 462. Instead, the case must be remanded to the agency to make a new determination.

■ Adherence to this rule does not mean, however, that this court will allow misconceptions in law that arise during the agency decision-making process to go unchecked. An important corollary to the general rule that courts will not substitute their views for the discretionary decisions of an agency on matters of policy is the recognition that reviewing courts do have the authority and responsibility to correct errors of law made by the agency. *Chenery Corp.*, 318 U.S. at 94, 63 S.Ct. at 462; *Charter Limousine v. Dade County Bd. of County Comm'rs*, 678 F.2d 586, 588 (5th Cir. Unit B 1982). Particularly in a case such as this where the resolution of the Debt Collection Act's applicability affects the parties' standing to raise the question of whether the Act abrogates the federal government's common law right to collect interest from the states, this court has an independent obligation to consider the applicability issue regardless of whether the issue is raised by either of the parties. *See, e.g., FW/PBS, Inc. v. City of Dallas*, — U.S. —, —, 110 S.Ct. 596, 607, — L.Ed.2d — (1990) (emphasizing that federal courts have an unflagging obligation under Article III of the Constitution to ensure that parties have standing to present their claims); *Bender v. Williamsport Area School District*, 475 U.S. 534, 541–43, 106 S.Ct. 1326, 1331–32, 89 L.Ed.2d 501 (1986) (same).

## B.

■ Pursuant to 31 U.S.C. § 3717(g)(2), the relevant portions of the Debt Collection Act do not apply "to a claim under a contract executed before October 25, 1982, that is in effect on October 25, 1982." Thus, the question before this court is whether the current claim falls within this exception thus rendering the Debt Collection Act and its purported preemptive effect inapplicable.

FDOLES does not contest the fact that the DOL's CETA grants may be considered contracts, thereby raising the specter that § 3717(g)(2) may take this case outside the Debt Collection Act's reach. *See Bennett v. New Jersey*, 470 U.S. 632, 638–39, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985) (observing that many federal grant programs are "much in the nature of a contract") (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1540, 67 L.Ed.2d 694 (1981)). Rather, FDOLES presents two separate arguments, each of which attempts to show that the § 3717(g)(2) exception has not been met and that, consequently, the Debt Collection Act's provisions are applicable to this case. In making these arguments, FDOLES concedes that the meaning of § 3717(g)(2)'s first requirement is unambiguous and that this requirement has been satisfied in this case: the instant claim is premised upon a contract executed before October 25, 1982. FDOLES focuses its attention on the second clause of § 3717(g)(2)—"in effect on October 25, 1982"—and offers two different interpretations of the clause, both of which it claims establish that this second criterion has not been met.

First, FDOLES contends that this second clause mandates that there exist continued contractual obligations beyond October 25, 1982, before the Debt Collection Act may be viewed as inapplicable. FDOLES avers that the contract in question in this case must be considered as being coextensive with the period covered by the audit. Because the audit period in this case ran from

October 1, 1980 through June 30, 1982, FDOLES claims that its contractual obligations ceased on June 30, 1982, and that consequently no contract was "in effect on October 25, 1982" as required under § 3717(g)(2).

This argument is without merit, both as a factual and as a legal matter. With regards to the facts in this case, it is apparent that, while the grant period extended only from October 1, 1980 through June 30, 1982, FDOLES as the prime sponsor of the federal government's CETA grant[4] assumed continuing responsibilities for monitoring the actions of its contractors and subrecipients to ensure that their actions complied with the program's statutory and regulatory requirements.[5] Among other things, these responsibilities included the continued monitoring and auditing of subrecipients to ensure that their records were being kept in accordance with program regulations and to ensure that the subgrant funds were being expended in compliance with CETA.[6] It is uncontested that FDOLES, as part of its monitoring obligations, engaged in these activities well into 1984.

Moreover, as a matter of law, FDOLES's argument cannot be reconciled with the Supreme Court's decision in *West Virginia v. United States*, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987). In *West Virginia*, the federal government provided services to West Virginia in 1972. The government billed the state for its services in late 1972 and early 1973. When the state had not remitted payment to the federal government by 1978, the federal government initiated suit. *Id.*, at 306–09, 107 S.Ct. at 704–05. The issue before the Supreme Court in *West Virginia* concerned whether the federal government could obtain prejudgment interest against the state. In holding that the federal government was entitled to prejudgment interest as a matter of federal common law, the Supreme Court decided the issue on the basis of federal common law. The Court declined, however, to reach the issue of whether the Debt Collection Act abrogated the government's federal common law right to collect interest from the states, reasoning that "th[e] statute does not apply to claims arising under contracts entered into before October 25, 1982, and therefore has no force here." *Id.*, at 312 n. 6, 107 S.Ct. at 707 n. 6.[7]

As was the case in *West Virginia*, the contract at issue in this case was executed before October 25, 1982. Thus, even if we were to assume that FDOLES had completed its performance obligations prior to October 25, 1982, *West Virginia* would dictate the conclusion that the Debt Collection Act was simply inapplicable in this matter.[8]

In its second argument, FDOLES seeks to distinguish *West Virginia* by asserting that § 3717(g)(2)'s second clause—"in effect on October 25, 1982"—modifies "claim," not "contract." In other words, FDOLES argues that § 3717(g)(2) provides

---

4. *See* 29 U.S.C. § 811(a)(1); 20 C.F.R. § 676.2(a).

5. *See* 29 U.S.C. § 835(a)(1) (repealed); 20 C.F.R. §§ 676.37(a)(3), 676.75–1, 676.75–2. *See generally City of St. Louis v. U.S. Dep't of Labor*, 787 F.2d 342, 346 (8th Cir.1986); *Montgomery County v. Dep't of Labor*, 757 F.2d 1510, 1512–13 (4th Cir.1985).

6. *See, e.g.,* 20 C.F.R. §§ 676.75–1, 676.75–2.

7. Contrary to FDOLES's assertions, it is not possible to characterize this footnote in *West Virginia* as *obiter dictum*. The Supreme Court necessarily had to determine whether the Debt Collection Act was applicable to the case before it. The Court had already concluded that the federal government was authorized under federal common law to collect interest from West Virginia; if the case had not fallen within

§ 3717(g)(2)'s scope, the Court would have been required to address the additional issue of whether the Act abrogated the federal government's common law right.

8. This conclusion does not nullify the second clause of § 3717(g)(2). As stated earlier, § 3717(g)(2) provides that § 3717's mandatory imposition of interest requirements is not applicable "to a claim under contract executed before October 25, 1982, that is in effect on October 25, 1982." The "in effect on October 25, 1982" clause could have a meaning independent of the prior clause—e.g., a contract executed before October 25, 1982, but not taking effect until January 1, 1983, might not fall within the purview of § 3717(g)(2) and, consequently, might not be covered by the Debt Collection Act.

that § 3717 is not applicable only where: (1) the contract is executed before October 25, 1982, and (2) the government's claim for money owed under the contract is in effect before October 25, 1982. Although this reading would be consistent with the results in *West Virginia* and in *Riles v. Bennett,* 831 F.2d 875, 878 (9th Cir.1987) (per curiam), *cert. denied,* 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988), this reading requires a construction of the statute neither apparent on its face nor supported by legislative history.[9] *See* S.Rep. No. 97-378, 97th Cong., 2d Sess. 29, *reprinted in* 1982 U.S.Code Cong. & Admin.News 3377, 3405 (the mandatory imposition of interest provision, § 3717, "shall not apply to any claim under a binding contract executed before the effective date of this subsection"). Because we find no evidence to support this strained interpretation of the statute, we decline to attribute the statute with FDOLES's proposed construction.

Accordingly, we conclude that the provisions of the Debt Collection Act are inapplicable to this matter. As a result, we need not enter the fray and determine whether the Debt Collection Act abrogates the federal government's common law right to collect interest. *Compare Arkansas v. Block,* 825 F.2d at 1258 (Act abrogates common law interest); *Pennsylvania Dep't. of Public Welfare v. United States,* 781 F.2d at 341-42 (same); *Perales v. United States,* 751 F.2d 95 (2d Cir.1984) (per curiam), *aff'g* 598 F.Supp. 19 (S.D.N.Y. 1984) (same), *with Gallegos v. Lyng,* 891 F.2d 788, 795-800 (10th Cir.1989) (federal government maintains common law right to recover interest against state and local governments); *County of St. Clair v. United States Dep't of Labor,* 754 F.2d 375 (6th Cir.1984 (table) (available on LEXIS) (same).

### C.

Having determined that Act is not applicable to this case, we must now determine whether we must remand this case for a new determination as to the imposition of interest. As we discussed, *supra,* at 1321-22, the general rule in administrative law cases is that courts, upon finding that an agency made an error of law, are not to presume that an agency will adhere to its original decision notwithstanding its prior misconception of the legal standards. The Supreme Court has, however, recognized a limited exception to this rule: "the rule in *Chenery* has not required courts to remand in futility." *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 756 n. 7, 106 S.Ct. 2169, 2176 n. 7, 90 L.Ed.2d 779 (1986) (citing *Illinois v. ICC,* 722 F.2d 1341, 1348-49 (7th Cir.1983)). Our conclusion that the Debt Collection Act's provisions are inapplicable in this case is clearly one that falls within this rule. In making her original decision, the Secretary exercised what she believed to be her right under the federal common law to impose prejudgment interest. In so doing, she concluded that the Debt Collection Act's provisions did not abrogate her right to do so. Having held that the Debt Collection Act's provisions are not applicable to this case, then the question is solely whether the DOL may, under federal common law, collect prejudgment interest. The Secretary has already made clear what her decision is with regard to that question. Consequently, a remand would be pointless. *See Illinois v. ICC,* 722 F.2d at 1349.

FDOLES concedes that the Secretary possessed the common law right to impose interest and does not challenge her decision to do so in this case. Consequently, we conclude that the Secretary's decision must be affirmed.

AFFIRMED.

---

**9.** Traditionally, it is not thought that a claim is "in effect"; rather, if Congress had sought to reach this result it would have formulated the statute in a manner such as follows: "this section does not apply to a claim under contract executed by October 25, 1982, where the claim is formally presented by October 25, 1982."