# WEST VIRGINIA v. UNITED STATES

No. 85–937.   Argued November 10, 1986—Decided January 13, 1987

MARSHALL, J., delivered the opinion for a unanimous Court.

*Charles G. Brown,* Attorney General of West Virginia, argued the cause for petitioner. With him on the briefs were *Silas B. Taylor,* Deputy Attorney General, and *J. Bradley Russell,* Assistant Attorney General.

*Deputy Solicitor General Lauber* argued the cause for the United States. With him on the brief were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Wallace, Charles A. Rothfeld, William Kanter,* and *Bruce G. Forrest.*

JUSTICE MARSHALL delivered the opinion of the Court.

The issue in this case is whether the State of West Virginia is liable for prejudgment interest on a debt arising from a contractual obligation to reimburse the United States for services rendered by the Army Corps of Engineers.

I

On February 26, 1972, heavy rains and resulting floods caused the collapse of a coal waste dam on Buffalo Creek in southwestern West Virginia. The "Buffalo Creek disaster" caused over 100 deaths and millions of dollars of property damage and left thousands homeless. In August of that year, a series of storms caused widespread flooding and mudslides in the same region of the State. Although there

was no additional loss of life, the "Gilbert Creek disaster" caused substantial property damage.

The President declared both events "major disasters," qualifying the affected areas for federal relief under the Disaster Relief Act of 1970, Pub. L. 91–606, 84 Stat. 1744, 42 U. S. C. § 4401 (1970 ed.) (DRA or Act), repealed Pub. L. 93–288, 88 Stat. 164. Section 226(a) of the Act authorized the Director of the Office of Emergency Preparedness to provide temporary housing, typically mobile homes, for persons displaced by the disaster. That section also governed site preparation for the mobile homes. It provided:

> "Any mobile home or readily fabricated dwelling shall be placed on a site complete with utilities provided by State or local government, or by the owner or occupant of the site who was displaced by the major disaster, without charge to the United States. However, the Director may elect to provide other more economical and accessible sites at Federal expense when he determines such action to be in the public interest." 42 U. S. C. § 4436 (1970 ed.).

In the aftermath of both disasters, the State found itself unable to prepare sites for the mobile homes. It asked the Army Corps of Engineers to do so, and the Corps agreed. In late 1972 and early 1973, the Corps billed the State for its site preparation services. The State acknowledged the bills, but, despite several requests, failed to make any payment. After delaying at the State's request, the United States brought suit against West Virginia in 1978, seeking to recover $4.2 million in site preparation costs plus prejudgment interest. West Virginia denied liability for the debt, claiming that the state official who had entered into the agreement had acted without authority. The District Court rejected this claim and found that the State was contractually obligated to the Corps for site preparation services. Civ. Action No. 78–2049 (SD W. Va., Sept. 27, 1982). The United States then moved for an order of prejudgment interest on

the outstanding debt.[1]  The District Court denied the motion.  It held that the appropriate analysis required an examination of the congressional purpose underlying the DRA and the relative equities between the parties.  After completing that analysis, the District Court concluded that the State should not be liable for prejudgment interest.  Civ. Action No. R–78–2049 (SD W. Va., Jan. 28, 1983).

The United States Court of Appeals for the Fourth Circuit affirmed the District Court's holding that the State was contractually obligated on the debt, but reversed the determination that the State was not liable for prejudgment interest. 764 F. 2d 1028 (1985).  It held that the question was governed by federal law, under which prejudgment interest was allowable as a matter of right in a breach-of-contract action where the amount due was liquidated, ascertained, or agreed to.  *Id.*, at 1030–1031.  The Court of Appeals rejected the District Court's conclusion that the determination whether prejudgment interest was owing depended on a balancing of equities, but held that, even if it were to apply the balancing test, the United States would prevail.  *Id.*, at 1032–1033.  It remanded the case to the District Court to enter an award of prejudgment interest.  We granted certiorari, limited to the question whether West Virginia was properly required to pay prejudgment interest.  475 U. S. 1009 (1986).  We affirm.

## II

"[T]he rule governing the interest to be recovered as damages for delayed payment of a contractual obligation to the United States is not controlled by state statute or local common law.  In the absence of an applicable federal statute, it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for nonpayment of the amount found to be

---

[1] The amount sought was $5,783,098.09 through October 18, 1982, plus $2,841.26 for every day thereafter until judgment was entered.  App. to Pet. for Cert. C–3, n. 2.

due." *Royal Indemnity Co.* v. *United States*, 313 U. S. 289, 296 (1941); see also *Clearfield Trust Co.* v. *United States*, 318 U. S. 363, 366–367 (1943). While there are instances in which state law may be adopted as the federal rule of decision, see *United States* v. *Yazell*, 382 U. S. 341 (1966), this case presents no compelling reason for doing so. A single nationwide rule would be preferable to one turning on state law, and the incorporation of state law would not give due regard to the federal interest in maintaining the apportionment of responsibility Congress devised in the DRA. Finally, application of a federal rule would not "disrupt commercial relationships predicated on state law," *United States* v. *Kimbell Foods, Inc.*, 440 U. S. 715, 729 (1979) (footnote omitted), since state law would not of its own force govern contracts between a State and the Federal Government.

Given that state law may neither govern of its own force nor be adopted as the federal rule of decision, it remains for us to apply the federal rule. In *Board of Comm'rs of Jackson County* v. *United States*, 308 U. S. 343 (1939), this Court addressed the issue. There, the Court considered whether the political subdivision of a State should be liable to the United States for prejudgment interest on a tax refund owed to a Native American on whose behalf the Federal Government had brought suit. The Court held that prejudgment interest would not be assessed. While the Court noted that certain defenses asserted by States were ineffective as against the Federal Government because of the historic immunity of the sovereign from those defenses, *id.*, at 351, it determined that interest, which lacked comparable historical roots, could not simply be required with respect to all claims by the United States against a State or its political subdivision. It therefore held that, before applying the usual rule regarding prejudgment interest as against a private party to a State, a federal court should consider the interests of the two governments involved. *Id.*, at 350. Noting that aggrieved taxpayers who were not Native Americans were not,

under state law, entitled to interest on tax refunds, *id.*, at 349, the Court concluded that individuals whose rights to a state tax refund arose under federal law should not be put in a better position than taxpayers whose rights arose under state law. *Id.*, at 352. The Court further reasoned that it would be inequitable to award interest because the United States had not moved for eight years to collect the money owed by the county. *Ibid.*

Application of this analysis to the present case indicates that prejudgment interest should be required. No state policy compels any deviation from the longstanding rule that parties owing debts to the Federal Government must pay prejudgment interest where the underlying claim is a contractual obligation to pay money. *Royal Indemnity Co.* v. *United States, supra,* at 295–297. Moreover, federal policy plainly calls for an award of interest. The purpose of the DRA was not to relieve States of the entire burden of disaster relief, but to apportion that responsibility between the State and Federal Governments. See, *e. g.*, §§ 101(a)(2) and (b) (Act was intended "to assist the efforts of the affected States," and to provide "an orderly and continuing means of assistance by the Federal Government to State and local governments"); § 102(1) (Governor of any State in which a disaster occurs must certify the need for federal disaster assistance and "giv[e] assurance of the expenditure of a reasonable amount of the funds of such State, its local governments, or other agencies for alleviating the damage . . . resulting from such catastrophe"). Section 226(a) of the DRA reflects the statute's allocative intent; it explicitly states that the Federal Government is not to bear the costs of site preparation for temporary housing for disaster victims. Prejudgment interest is an element of complete compensation, see, *e. g.*, *General Motors Corp.* v. *Devex Corp.*, 461 U. S. 648, 655–656, and n. 10 (1983);[2] fully repaying the Federal Government for

---

[2] Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is

any costs of site preparation will further the distribution of the burdens of disaster relief that Congress intended.[3]

This federal interest in complete compensation is likely to be present in any ordinary commercial contractual arrangement between a State and the Federal Government. In such a situation, it is also difficult to imagine a state interest that would justify relieving the State of its obligation to compensate the Federal Government fully for its efforts. Here, the State asserts none, except its understandable interest in not paying any more than it has to. The State argues that it should be exempt from paying prejudgment interest to the United States because, under its own law, it may not be held liable for interest unless it has consented to be. See *Guaranty Trust Co. of New York* v. *West Virginia Turnpike Comm'n*, 144 W. Va. 266, 271, 107 S. E. 2d 792, 796 (1959). But the source of this exemption is the State's sovereign immunity, see *id.*, at 274–275, 107 S. E. 2d, at 797–798; since the State must consent to be sued by private parties, it may consent in a limited fashion and refuse to be liable for prejudgment interest. Because States have no sovereign immunity as against the Federal Government, *United States* v. *Texas*, 143 U. S. 621, 646 (1892), any rule exempting a sovereign from the payment of prejudgment interest not only does not apply of its own force to the State's obligations to the Federal Government, cf. *Library of Congress* v. *Shaw*, 478 U. S. 310 (1986),[4] but also does not represent a policy

entered, thereby achieving full compensation for the injury those damages are intended to redress. See Comment, Prejudgment Interest: Survey and Suggestion, 77 Nw. U. L. Rev. 192 (1982).

[3] The District Court held that whether interest had to be paid depended on a balancing of equities between the parties; the Court of Appeals rejected such an approach, as do we. This is not to say that an equitable consideration such as laches cannot bar an otherwise valid claim for interest, see *Board of Comm'rs of Jackson County* v. *United States*, 308 U. S. 343, 352–353 (1939).

[4] Petitioners contend that *United States* v. *North Carolina*, 136 U. S. 211 (1890), establishes that a State may not be liable for interest, even to

the federal courts are obliged to further.[5]    Cf. *Board of Comm'rs of Jackson County*, 308 U. S., at 349, 352; *United States* v. *Yazell*, 382 U. S., at 352 (while courts must show "solicitude for state interests, particularly in the field of family and family-property arrangements," these interests may be overridden to avoid injury to "clear and substantial interests of the National Government").    Accordingly, we hold that West Virginia may under the circumstances of this case be held liable for prejudgment interest.[6]

---

the United States, unless it consents either by statute or in a form authorized by statute.    That case was decided before *United States* v. *Texas*, 143 U. S. 621 (1892), in which this Court held dispositively that States retain no sovereign immunity as against the Federal Government.    We do not speculate as to whether the result in *United States* v. *North Carolina* could have been sustained on a rationale other than the one the Court articulated there.

[5] West Virginia does not have a general policy against prejudgment interest.    Under West Virginia law, such interest has been available by statute in contract actions between private parties since 1868.    See W. Va. Code § 56–6–27 (1966) (the jury in all contract actions "shall find the aggregate of principal and interest due at the time of the trial"); W. Va. Code, Ch. 131, § 14 (1923) (same); W. Va. Code, Ch. 120, § 14 (1882) (same); W. Va. Code, Ch. 131, § 14 (1868) (same).    Moreover, in 1981, W. Va. Code § 56–6–31 was amended to provide for prejudgment interest in cases other than contract actions, except where otherwise provided by law, where a judgment provided for special damages as defined in the statute, or liquidated damages.    W. Va. Code § 56–6–31 (Supp. 1986).

[6] We decline to attribute any significance for purposes of this case to the Act of Jan. 12, 1983, Pub. L. 97–452, 96 Stat. 2467.    This statute prescribes the interest payable by "person[s]" to the Federal Government, 31 U. S. C. § 3717(a)(1), but excludes from the definition of "person" any "agency . . . of a State government, or of a unit of general local government."    31 U. S. C. § 3701(c).    As stated in § 3717(g)(2), this statute does not apply to claims arising under contracts entered into before October 25, 1982, and therefore has no force here.    We can draw no inference about Congress' comprehension of the federal common law of interest from its enactment, without any discernible legislative history, of a definitional section excluding state agencies from those "persons" statutorily required to pay interest on debts owed to the Federal Government.    Moreover, we venture no opinion regarding the question whether this enactment was in-

We recognize that our holding may work a hardship upon the citizens of West Virginia, who have already suffered greatly as a result of the tragedies that gave rise to this litigation. But the solution for that problem must lie with Congress and not the courts. The DRA expresses a clear policy that responsibility for disaster relief should be apportioned in a particular way between the State and Federal Governments. A remedy for any asserted unfairness in this apportionment must be sought through the political process. The judgment of the Court of Appeals is

*Affirmed.*

---

tended to abrogate or leave intact the federal common law governing when a State must pay interest to the Federal Government. See *Pennsylvania Dept. of Public Welfare* v. *United States*, 781 F. 2d 334, 341–342 (CA3 1986); *Perales* v. *United States*, 598 F. Supp. 19, 23–24 (SDNY), aff'd, 751 F. 2d 95 (CA2 1984) *(per curiam)*.