**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 91–5056.**

United States Court of Appeals, Federal Circuit.

Dec. 10, 1991.

ment may choose contractors regardless of the established terms.

Alan S. Larsen, of counsel, argued for plaintiff-appellant. With him on the brief were Mildred J. Carmack and G. Kevin Kiely, of Schwabe, Williamson & Wyatt, Portland, Or.

E. Kathleen Shahan, of the Civil Div., Dept. of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director. Of counsel was William P. McGinnies and Kenneth S. Capps, of the U.S. Dept. of Agriculture, Office of Gen. Counsel, Washington, D.C.

Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

The United States Claims Court held the Insurance Company of North America (INA) liable, as surety, for interest accruing after the Government demanded payment from INA. *Summit Contractors v. United States,* 21 Cl.Ct. 767 (1990). Because INA's obligation to pay matured upon the Government's demand, this court affirms.

## BACKGROUND

In light of the Claims Court's thorough recitation of the facts, this court need only summarize. The United States Forest Service awarded Summit Contractors a timber removal contract on March 18, 1982. Under the contract, Summit agreed to remove, and pay for, all designated timber within the Canyondam area by March 31, 1984. Summit selected INA as surety for the project. On February 19, 1982, INA issued a performance bond for $129,000.

Summit did not complete the project in the time specified by the contract. On April 6, 1984, the contracting officer terminated the contract. The Forest Service treated Summit's July 13, 1984 protest of the termination as a claim under the Contract Disputes Act of 1978. *See* 41 U.S.C. §§ 601–13 (1982). On July 23, 1984, the Forest Service resold the remaining timber.

On October 19, 1984, the contracting officer decided that Summit owed the Government $358,712.16 for breach of contract. The Forest Service notified INA of its decision. In October 1985, the Forest Service sent INA a demand letter. The letter stated that interest would accrue on any unpaid portion of the bond starting November 21, 1985.

Summit contested the contracting officer's final decision in the Claims Court. The United States counterclaimed for damages resulting from Summit's breach of contract. INA filed a third-party complaint repeating each of Summit's reasons for denying liability. In addition, INA asserted that its liability could not exceed the penal amount of the bond.

The Claims Court granted the United States' motion for summary judgment and denied INA's cross-motion. The Claims Court held Summit liable for breach of contract. *Summit,* 21 Cl.Ct. at 781. The trial court ordered INA to pay prejudgment interest in addition to the full bond amount.* *Id.* On appeal, INA challenges the Claims Court's award of prejudgment interest. INA contends its liability is limited to the face amount of the bond. INA also argues that interest did not accrue on

---

* The Claims Court assessed prejudgment interest from November 3, 1984. At oral argument on appeal before this court, the Government conceded that prejudgment interest should run from November 21, 1985.

its obligation until the conclusion of Summit's lawsuit against the Government.

## DISCUSSION

### I.

 This court must first determine whether prejudgment interest may increase INA's liability beyond the face amount of the bond. The Supreme Court has endorsed assessment of interest beyond the penal amount of a surety bond. *United States v. United States Fidelity & Guar. Co.*, 236 U.S. 512, 530–31, 35 S.Ct. 298, 303–04, 59 L.Ed. 696 (1915). The Court reasoned that the surety can be liable for its "own default in unjustly withholding payment after being notified of the default of the principal." *Id.* (quoting *United States v. Hills*, 26 F.Cas. 322 (C.C.D.Mass. 1878) (No. 15,369)). Thus, if a surety delays payment beyond proper notification of liability, interest accrues on the debt. This interest may cause the surety's obligation to exceed the penal sum of the bond. *See* Arthur Adelbert Stearns, *The Law of Suretyship* 283–84 (James L. Elder ed., 5th ed. 1973); 1 George W. Brandt, *The Law of Suretyship and Guaranty* 271–72 (1905).

 The assessment of prejudgment interest on a surety bond ensures that, upon payment, a creditor receives the value of the bond on its due date. The surety promises to pay the creditor the full value of the bond upon proper demand. If the surety withholds payment upon proper demand, the creditor loses the opportunity to invest or otherwise use the bond amount. The Supreme Court stated:

> Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.

*West Virginia v. United States*, 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987). As noted by the Supreme Court, "[p]rejudgment interest is an element of complete compensation." *Id.* at 310, 107 S.Ct. at 706. Prejudgment interest "should fairly compensate the aggrieved party" for losses suffered. *United States v. American Mfrs. Mut. Casualty Co.*, 901 F.2d 370, 373 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 143, 112 L.Ed.2d 109 (1990).

In this case, the Government seeks no more than the value of the bond on its due date. The assessment of prejudgment interest does not penalize the surety beyond the bond limit, but merely compensates the creditor for the surety's use of the money already due. This interest returns the parties to the financial position they would have occupied had the surety paid its obligation when due. The face amount of the bond sets the amount of the surety's obligation on the due date. Interest provides the creditor the same value upon payment at a later date.

### II.

 Next this court must determine when INA's obligation to pay arose. INA's bond guaranteed Summit's performance under the contract. When Summit defaulted on its contract, INA's obligation to pay arose. From that time forward, the Government could properly demand payment of the bond. Therefore, as this court has stated, a surety's obligation matures "[w]hen a contractor defaults under the contract." *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1161 (Fed.Cir.1985).

 The surety's obligation to pay does not wait for completion of legal contests between the principal and the creditor. If a surety's obligation to pay only arose upon conclusion of lawsuits, the creditor would lose a significant part of the protection it bargained to obtain. The United States required Summit to obtain a surety to protect Government interests. *See Fireman's Fund Ins. Co. v. United States*, 909 F.2d 495, 499 (Fed.Cir.1990). Specifically, the Government sought a third party who, along with the principal, would be jointly and severally liable on the contract. The Government also bargained for someone to pay the bond amount, when due, without the need for recourse to the courts. An important function of a surety is "to pro-

tect the creditor from the burden and delay of enforced collection." H. Arant, *Handbook of the Law of Suretyship and Guaranty* 314 (1931).

In sum, litigation between Summit and the Government did not toll INA's independent surety obligations. As the United States Court of Appeals for the District of Columbia stated, "[t]he creditor's claim against the surety is independent of the claim against the debtor." *U.S. Indus. v. Blake Constr. Co.*, 671 F.2d 539, 552 (D.C.Cir.1982) (citations omitted). INA's obligation to the Government matured when Summit breached its contract.

During discovery in the Claims Court case, the Government stated that Summit need not tender payment until the conclusion of litigation. The Government also said that INA need not pay until Summit failed to pay its debt. These statements, however, did not alter the accrual of interest. Indeed, the Government also informed INA and Summit that litigation would "not toll the accrual of interest."

INA became jointly and severally liable with Summit for performance of the Canyondam Timber Sale Contract when it furnished the performance bond. Therefore, the Government could turn to INA for satisfaction of the contract upon Summit's breach. Thus, INA's obligation to pay interest in excess of the penal amount of the bond arose when it delayed payment beyond a proper demand on the bond. *See* Stearns, *supra* at 284.

On October 19, 1984, the contracting officer issued a final determination that Summit was liable for breach of contract. The Government informed INA of this determination. On October 22, 1985, over a year later, the Forest Service sent INA a letter demanding payment of the bond by November 21, 1985. The letter stated that interest would accrue from that date. INA had ample time to assess its liabilities before November 21, 1985. With full notice, INA chose to withhold payment. At the latest, on November 21, 1985, interest began to accrue on INA's bond. From that time, INA, in effect, took for itself a loan on funds due the Government. INA cannot now claim that no interest is due.

## CONCLUSION

A surety owes interest from the time a creditor properly demands payment under a suretyship contract. If a surety does not pay on time, interest may increase a surety's obligation beyond the penal amount of the bond. Therefore, INA is liable for the $129,000 penal amount of its bond plus prejudgment interest from November 21, 1985.

## COSTS

Each party shall bear its own costs.

AFFIRMED.