## MAYOR AND CITY COUNCIL OF BALTIMORE

v.

### Carol M. BROWNER, et al.

### Civ. No. Y-94-489.

United States District Court, D. Maryland.

Oct. 7, 1994.

---

250

Neal M. Janey, Baltimore, Justin J. King, Otho M. Thompson, and Ilene J. Oken, Baltimore, MD, for plaintiff.

Lynne A. Battaglia, Kaye A. Allison, Baltimore, MD, Carl Strass, Susanne Lee, and Chris Day, Washington, DC, for defendants.

### *MEMORANDUM OPINION*

JOSEPH H. YOUNG, Senior District Judge.

The Mayor and City Council of Baltimore (the "City") seek a declaratory judgment finding that the Environmental Protection Agency ("EPA") may not impose cut-off dates for the use of grant funds and also seek an injunction prohibiting EPA from seeking reimbursement and interest on funds withheld by the City. Defendants have moved to dismiss the complaint.

This dispute arises out of a series of grant agreements between the City of Baltimore

and the Environmental Protection Agency[1] for the construction of sewerage facilities pursuant to Title II of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* Title II[2] is a grant program designed to provide federal funds for some of the projects that localities undertake to attain the standards established by the Clean Water Act and other federal environmental laws. Although not all projects necessary for attainment are funded, grant money from EPA has played a significant role in state and municipal compliance efforts.

The Office of the Inspector General periodically audits grant projects to ensure that the beneficiary of a grant is abiding by the terms established by statute, regulation, and the language of the granting instrument itself.[3] If EPA finds violations it can then seek reimbursement of grant funds spent inappropriately.[4] Pursuant to an audit, EPA often establishes cut-off dates which establish the date beyond which no EPA grant funds may be spent whether or not the grant project is completed. Unspent funds are to be returned.

At issue in this case is EPA's effort to be reimbursed, on a pro rata basis, for grant funds given to the City for projects not completed by their respective cut-off dates. Also at issue is the assessment of interest by EPA on those funds spent or withheld by the City after the cut-off dates. The City has filed suit seeking a finding that the imposition of cut-off dates is invalid and that EPA should be enjoined from seeking reimbursement and interest. The City's argument is based on the language of the controlling statutes and regulations, contract, and estoppel.

In the motion to dismiss the City's complaint, EPA contends that the imposition of cut-off dates and the commensurate efforts to be reimbursed for funds unspent on that date is a valid exercise of its authority. Further, it asserts that it is entitled by law to prejudgment interest from the City. Although the Court finds that the grant regime established by EPA is legitimate and that it is entitled to reimbursement, the Court will not require the City to pay interest.

Although the City's complaint is primarily based in contract law, it must first be determined generally that the imposition of cut-off dates by EPA is a valid exercise of its authority before deciding if a grant given under Title II is a contract, and if so, whether EPA violated its contracts with the City by establishing and enforcing cut-off dates for the grants in dispute.

■ The City argues that the imposition of cut-off dates is inappropriate absent specific authority in the Clean Water Act, the regulations pertaining to the administration of grants,[5] or the terms of the grant offer or acceptance forms. However the presence of project period start and finish dates on each grant award and the repeated references throughout the regulations to time limits and schedules for grant-funded projects anticipate such actions. For example, the text of 40 C.F.R. § 35.917–1(a), which was in effect prior to the establishment of the cut-off dates in dispute here, requires that the grantor and grantee establish "a schedule for completion" of grant projects. Similarly, 40 C.F.R. § 30.306(a), a subpart which the City cites,[6] states that, "assistance agreement[s] will state the length of [the] approved budget period and project period."

Although the establishment of cut-off dates is not explicitly provided for in the relevant regulations, they are obviously implied and required to lend force to the provisions regulating the timing of grant-funded projects. Otherwise, the establishment of time limits would be a meaningless exercise for grantor and grantee. EPA must have a method to attain reimbursement of funds already disbursed when a project exceeds its time limit.

---

**1.** Specifically at issue are five grants; for work at the Jones Falls and McComas Street pumping stations, for the Back River wastewater treatment plant, and two separate grants for work on the Eastern Avenue pumping station.

**2.** 33 U.S.C. § 1281 *et seq.*

**3.** 40 C.F.R. § 30.540.

**4.** 40 C.F.R. § 30.802(a).

**5.** 40 C.F.R. Part 30 *et seq.*

**6.** Complaint, ¶ 62(2).

Cut-off dates are simply the enforcement of the limits specifically provided for in the regulations in the context of grant funds disbursed proactively.[7] The regulations in question are not "arbitrary, capricious, or manifestly contrary" to 33 U.S.C. § 1281, *et seq.*, and a policy of imposing cut-off dates for grant funding is not invalid. *See, Chevron v. Natural Resources Defense Counsel,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Cut-off dates are an implicit, reasonable, and essential part of the regulatory regime governing grant awards.

The City nonetheless claims that the grant it received was consideration for a bilateral contract, a contract that imposed a burden upon EPA to follow through with its payments regardless of project dates listed on grant awards. Whether grants, especially in the context of the Clean Water Act, are bilateral contracts is an unresolved issue. The plaintiff points to the language of 33 U.S.C. § 1283(a) which states that the approval of a grant application by EPA, ". . . shall be deemed a contractual obligation of the United States for the payment of its proportional contribution to such project." This language, the plaintiff contends, clearly demonstrates that Congress intended to confer contract rights upon grantees.

At least one court has agreed and specifically found that grants pursuant to the Clean Water Act are traditional bilateral contracts. *County of Suffolk, New York v. United States,* 19 Cl.Ct. 295, 296 (1990). However, another decision in that same court, *Town of Fallsburg v. United States,* 22 Cl.Ct. 633, 642 (1991), found that, "[g]rants under the CWA manifest [a] . . . hybrid character." Such grants are a hybrid because a grant recipient agrees to abide by both the terms of the contract and the legal requirements in place

when the grants are made. *See, Bennett v. Kentucky Department of Education,* 470 U.S. 656, 670, 105 S.Ct. 1544, 1552–53, 84 L.Ed.2d 590 (1985).

■ The argument that grants are traditional bilateral contracts is unpersuasive. There is no link between the obligation of a state or municipality to abide by the standards of the Clean Water Act and the receipt of federal grant funds. *State Water Control Board v. Train,* 559 F.2d 921, 924 (4th Cir. 1977). Moreover, the City's assertion that it could have chosen a cheaper alternative is inaccurate, for the Clean Water Act requires that the grantee select the most cost-effective means of attaining the relevant standards. 33 U.S.C. § 1298. The City was required to comply with the promulgated environmental standards, and, to qualify to receive a grant, it had to comply in the most efficient manner. Thus, the projects undertaken provide no consideration for the grant and a bilateral contract did not exist.[8]

■ This Court is persuaded, however, by the reasoning in *Town of Fallsburg*[9] and in *Bennett* that such grants are hybrids. Essentially, grants are contracts with statutory and regulatory terms superimposed upon them. The appropriate standard for review would then depend upon the nature of the claim. If the disputed action is within the general ambit of the controlling statute or regulation, then the agency's actions would be reviewed for abuse of discretion. Alternatively, and as implied by 33 U.S.C. § 1283(a), all other matters outside that ambit are to be reviewed as if contractual and thus subject to de novo review according to traditional contract norms.

■ As suggested, EPA's use of cut-off dates is clearly within the relevant regulato-

---

7. The alternative for EPA should cut-off dates be generally disallowed would be to provide funding only when work was completed. It is obviously desirable and consistent with the relevant statutes and regulations for EPA to have the flexibility to provide funding prior to the grantee's expenditure of funds for a project yet retain some oversight to ensure that the terms of the grant are followed.

8. "Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of

honest dispute is not consideration." Restatement (Second) of Contracts § 73.

9. This case is particularly instructive as it involved an EPA finding of fiduciary malfeasance on the part of a grantee. Following a review process, EPA decided to sanction the town by withholding certain grant funds. The district court found EPA's action was not an abuse of discretion. *Town of Fallsburg v. United States,* 22 Cl.Ct. at 646.

ry framework. Specific administrative decisions involving the application and enforcement of cut-off dates are thus to be reviewed only for abuse of discretion.[10] It can not in any way be said that EPA's actions were either capricious or arbitrary. The completion dates for the projects are listed on the face of the grants, the cut-off dates were announced well in advance and were substantially after the dates listed on the grants,[11] and EPA sought reimbursement for the purpose of distributing the funds to other programs in need of funds and more likely to comply with the terms of the grant awards. The attempted enforcement of the cut-off dates by EPA is neither arbitrary nor capricious.

As for the City's estoppel claim, the Clean Water Act requires that the grantee select the most cost-effective means of attaining the relevant standards. Thus, there can be no material detrimental reliance as the City could not have undertaken a less expensive course of action even if it had received no money from the federal government. If there can be no detrimental reliance, the EPA should not be estopped from enforcing its regulatory rights.

Having found that the plaintiff's substantive claim should be dismissed, it is necessary to consider the propriety of awarding prejudgment interest to the defendants. Although the plaintiff has not formally moved for summary judgment of the issue of interest, judgment is nonetheless appropriate at this time.[12] Both parties have thoroughly briefed the issue and the facts material to a determination of the appropriateness of awarding prejudgment interest are uncontroverted.

The defendants suggest that such interest is mandatory as compensation for failure to pay money immediately when it is due. The authority cited, however, does not support this position. Rather, interest is mandatory only when the nature of the indebtedness is contractual. *See, e.g., West Virginia v. United States*, 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987). Moreover, interest is mandatory only when the debtor is a private party. *United States v. Texas*, —— U.S. ——, ——, 113 S.Ct. 1631, 1634–35, 123 L.Ed.2d 245, 252 (1993). The defendants themselves assert that the grantor-grantee relationship is not contractual, and because the City is not a private party, an award of interest is not mandatory, but within the discretion of this Court. In *Board of Commissioners of the County of Jackson, Kansas v. United States*, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939), the Supreme Court found that prejudgment interest against a public body, "is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable." One court recently suggested that some of the factors mitigating against an award of interest include a good-faith and colorable belief that the money was properly withheld and a cessation of the improper activity upon learning of its impropriety. *U.S. Department of Labor v. Shenandoah Baptist Church*, 707 F.Supp. 1450, 1463 (W.D.Va.1989).

---

**10.** Even if this Court accepted the City's position, contract law would still mandate a dismissal of the City's claim. The project completion date is a material term of the contract. Failure to timely complete is potentially a material breach, and a two-year delay, see n. 11 infra, is certainly so.

The grantor would thus be allowed to choose restitution as a remedy, including reimbursement of funds already given to the grantee.

**11.** The relevant dates are as follows:

|  | Project Period End Date | E.P.A. Cut–Off Date |
| --- | --- | --- |
| Jones Falls | February, 1979 | December, 1981 |
| Eastern Ave. (1) | February, 1979 | May, 1982 |
| Eastern Ave. (2) | September, 1979 | February, 1982 |
| Back River | July, 1982 | June, 1986 |
| McComas | N/A | February, 1980 |

**12.** Summary judgment for a plaintiff seeking injunctive relief is appropriate when there is no genuine issue as to any material fact and the plaintiff is entitled to such relief as a matter of law. *See, S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33–34 (2nd Cir.1978).

It would be inequitable to require the City of Baltimore to pay interest under the facts of the case. The City retained grant money to complete projects that it had been given the money to complete. It did not acquire the money through deceit or mistake. There was an honest and reasonable belief that such money could and should be kept and spent. The City has at all times acted in good faith and has followed all of the proper administrative and judicial procedures. In short, this is precisely the exceptional circumstance where an award of interest would be unfair to the City.

## ORDER

In accordance with the attached Memorandum, it is this 7th day of October, 1994, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant's Motion for Dismissal BE, and the same IS, hereby GRANTED in part and DENIED in part;

2. That the Defendant BE, and the same IS, hereby ENJOINED from assessing prejudgment interest;

3. That judgment BE, and the same IS, hereby entered for Defendants as to all other issues; and

4. That a copy of this Memorandum and Order be mailed to the counsel for the parties.