*Roger SINGER*
Plaintiff-Appellant
*vs.*
*Gordon H. NEZ*
Defendant-Appellee
In the Supreme Court of the Navajo Nation

No. SC-CV-04-99

July 16, 2001

Scott E. Borg, Esq., Albuquerque, New Mexico, for Appellant.

Terry R. Guebert, Esq., and Alysan Boothe Collins, Esq., Albuquerque, New Mexico, for Appellee.

Before YAZZIE, Chief Justice, and AUSTIN and L. MORRIS, Associate Justices.

Opinion delivered by Austin, Associate Justice.

This is an appeal from an order of the Window Rock District Court, following a jury trial and award of damages, which denied Roger Singer's motion for prejudgment interest at the rate of 12% per annum. We reverse because the district court abused its discretion in refusing to award prejudgment interest.

## I

The Appellant, Roger Singer ( "Singer"), and the Appellee, Gordon Nez ("Nez"), were involved in an automobile crash on Arizona Route 264 at St. Michaels, Navajo Nation (Arizona) on March 8, 1996. Nez made a left turn from westbound Route 264 in front of Singer, who was traveling east in a compact car at a speed of approximately 45 miles per hour. Nez was driving a pickup truck, and his New Mexico driver's license limited him to local driving only, due to a cataract in his left eye. Both vehicles were a total loss. Singer suffered a broken right index finger, a concussion, injuries to joints and ligaments, a neck injury, bruises and contusions to the chest and abdomen, and post traumatic stress disorder.

Singer made a claim with Nez's insurer, State Farm Insurance Company, under an automobile insurance policy which had $100,000 in personal injury liability coverage. Although Singer incurred $10,195.47 in medical expenses alone, State Farm offered only $3,000 for medical expenses and $1,500 for other damages. On October 15, 1996, State Farm increased its settlement offer to $9,523.84, which was still less than the medical expenses.

Singer filed suit on January 22, 1997, claiming damages and prejudgment interest. Nez, through an attorney retained by State Farm, denied liability and damages. He demanded a jury trial. Shortly thereafter, Singer's attorney gave Nez' s attorney a liability report prepared by an accident reconstruction expert. It concluded that Nez was at fault. There was no settlement offer in response to the report.

The district court held a pretrial conference on the case on June 11, 1997. Singer asked for a trial by September of that year, and Nez agreed. The court indicated its desire to try the case in September or October. The court asked if there had been settlement discussions and offers, and Nez's attorney said he had raised the settlement offer to $15,000. Singer's attorney asked for the policy limit of $100,000, but said that he might be willing to settle for less. The court admonished Singer's attorney for seeking the policy limit for what it apparently perceived to be injuries that were not serious. The court stated:

> Well, you're not getting $100,000, I can guarantee you that. Even if the

jury comes back with it, I'm not going to accept it. You're asking for too much. Broken finger, bruises to the chest, and I don't know about the brain injury. ... you'd better come down with your figures and try to be reasonable about this. Trans. at 8 (June 11, 1997).

Singer filed a certificate of readiness for trial in September 1997, and asked for a final pretrial conference. Nez opposed the scheduling of a pretrial conference and trial date, and sought to delay the case. The court scheduled a second pretrial conference for June 8, 1998, and set trial for June 29, 1998.

During the June 8, 1998 pretrial conference, Nez filed a motion asking the court to reschedule the trial date, and to permit calling two expert witnesses. Those witnesses were not called at trial. The court granted the motion and proposed a trial date of August 10, 1998. Singer's attorney objected to that date, because he had made a "large" deposit for a trip and would lose it if he canceled. When the court indicated that the only alternative was to wait for a much later date because the judge was leaving the bench, the attorney agreed to cancel his trip and forfeit the deposit to accommodate the court and his client.

When the court asked about the possibility of settlement, saying again that Singer would not get the $100,000 policy limit, Singer asked for $35,000. Nez's offer remained at $15,000, which Singer said was "not a fair and reasonable offer." The court threatened sanctions against Singer in the event a jury award was close to the $15,000 offer, saying that Singer should have settled the case long ago, and advised that he was wasting the court's time. Nez increased his offer to $20,000 shortly before trial started. Singer rejected it.

The case went to a jury trial on August 10, 1998, and on August 12, 1998, the jury found that Nez was one hundred percent liable for the automobile accident and awarded Singer $75,000 in damages. Singer then moved the court for an award of prejudgment interest at the rate of 12% per year. He argued that there was a frustrating history of settlement negotiations, and he had not engaged in any unreasonable delay in the disposition of the case. The court denied the motion because, first, the amount awarded by the jury was more than twice Singer's lowest settlement offer, and that made him 'twice whole." The court observed that the jury award was not based upon the strength of Singer's case, but because of the weakness of the defense. The second ground for denying the motion was that prejudgment interest could only be awarded if the sum of Singer's lowest settlement demand and interest on that demand at 12% per year exceeded the jury verdict, so that Singer would then be entitled to the difference between the settlement demand plus interest and the verdict.

These facts raise two issues: 1) Was the district court's denial of prejudgment interest an abuse of discretion; and 2) What are the limits of discretion for an award of prejudgment interest.

## II

We first establish the standard of review in this case. As a general principle, we will give considerable deference to a district court's exercise of discretion. *Higdon v. Nelson*, 7 Nav. R. 158, 159 (Nav. Sup. Ct. 1995). The parameters of discretion are whether the district court acted within the rules, principles and customs applicable to the facts of the case. We will not overturn a discretionary decision unless the record shows that there was an actual abuse of discretion. *Little v. Begay*, 7 Nav. R. 353, 354 (Nav. Sup. Ct. 1998). Thus, we will review the doctrine of prejudgment interest to ascertain the applicable rules, principles and customs. We will then apply them to the facts of the case.

## III

This Court has never addressed the issue of whether Navajo Nation law permits an award of prejudgment interest, and our district courts have dealt with that issue only twice. In *Bryant v. Bryant*, 3 Nav. R. 200, 201 (Ship. Dist. Ct. 1982), the court deferred ruling on the question of the allowance of prejudgment interest because the court was bound by a jury's verdict. The court relied upon general principles of American law from a legal encyclopedia. In the case of *Navajo Tribe of Indians v. Jones*, 5 Nav. R. 235, 250 (W.R. Dist. Ct. 1986), the court used its discretion to allow the Navajo Nation's claim for prejudgment interest. The damages could be measured with reasonable accuracy in that case. While these district court decisions are enlightening, we will conduct our own examination of the issue.

### A

The starting point is the statutes which define the damages which may be awarded by our courts. Section 701 (B) states: "Where the injury inflicted was *the result of the carelessness of a party, the judgment shall fairly compensate the injured party for the loss he has suffered.*" 7 N.N.C. § 701(B) (1995). Section 701(D) states: "Where the injury was inflicted as the result of accident, or where both the plaintiff and the defendant were at fault, the judgment shall compensate the injured party for a reasonable part of the loss he has suffered." 7 N.N.C. § 701(D) (1995). The first statute applies to this case, because the jury made a determination of fault. The second statute does not apply, because the jury found that the defendant was fully liable for the plaintiff's injuries. The relevant questions then are: Will prejudgment interest "fairly compensate" Singer for his loss?; and What was that loss?

Prejudgment interest is the norm in the United States. One excellent rationale for it is stated in the case of *In re Pago Pago Aircrash of January 30, 1974*, 525 F. Supp. 1007, 1014 (C.D. Cal. 1981), and it is as follows:

> An individual who must litigate to recover damages should be placed in the same position, when he recovers, as the individual who recovered the day he suffered an injury. Otherwise, the tortfeasor benefits from

denying liability and continuing to litigate, while he retains the use of money to which the plaintiff is entitled, and the plaintiff is deprived of the benefit he should have derived from an immediate recovery.

The purpose of prejudgment interest is to place the injured person in as good a position as he otherwise would have been, because damages also include "the foregone use of the money." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-656 (1983). On another occasion, the Court said, "Prejudgment interest is an element of complete compensation." *West Virginia v. United States*, 479 U.S. 305, 310 (1987) (citations omitted). Another way of putting it is, prejudgment interest is designed to "make whole" an injured person. *See e.g., General Motors Corp. v. Devex*, 461 U.S. at 655-656.

There is a certain element of punishment in the form of delay damages as well. In this particular case, Singer presented his claims to State Farm Insurance Company, and its initial response was to make a settlement offer before the filing of suit which was initially less than half of the medical expenses alone. State Farm then made another offer which was still lower than the medical expenses. After suit was filed, although Singer's attorney gave State Farm an accident reconstruction professional's evaluation of fault, Nez did not make a settlement offer. By the time of the June 11, 1997 pretrial conference, the settlement offer was raised to $15,000. When Singer announced he was ready for trial and asked for a pretrial conference and a trial date setting, Nez opposed and sought a delay. When Singer asked for $35,000 to settle at the second pretrial conference, Nez's offer remained at $15,000. Accordingly, Singer was compelled to try his claim to a jury, and it awarded $75,000 as damages, which was more than twice his offer during the second pretrial conference. These facts show that indeed, Singer suffered damages because he did not receive "the benefit he should have derived from an immediate recovery." *In re Pago Pago Aircrash*, 525 F. Supp. at 1014.

The court in *Navajo Tribe of Indians v. Jones*, 5 Nav. R. at 250, allowed prejudgment interest from the date of loss to the time of verdict. If one of the purposes of awarding prejudgment interest is deterring litigation, then that is too liberal an award. There should be an offer made to the person who committed the injury (or his agent, such as an insurance company), with a discussion of the facts of liability, proof of the loss and a showing of the injury actually suffered. If that offer is rejected in objective bad faith, or a counter-offer which is unreasonable is made, then that is the point when prejudgment interest should begin accruing. Otherwise, prejudgment interest will begin accruing from the date the complaint is filed. Prejudgment interest must be claimed in a prayer for relief, although the plaintiff need not plead the circumstances which justify the award. In this case, Singer will receive prejudgment interest from the date State Farm offered $3,000 for medical expenses and $1,500 for other damages.

We are aware of the potential for litigation over the words "bad faith" and 'unreasonable." However, we believe that these potential disagreements are

outweighed by our desire to promote good faith negotiations that would lead to the settlement of claims without resort to the court system. In any event, the trial court would have the discretion to determine what is bad faith or unreasonable, and as stated earlier, we will give considerable deference to the trial court's use of its discretion.

We discount the district court's speculation about the meaning of the jury verdict which was twice the size of Singer's last settlement offer. The court was in no position to read the minds of the jurors, although it was in a position to assess Nez's case. The failure to call the witnesses Nez requested after the time for identifying witnesses had expired, and the court's commentary on the weakness of Nez's case, reinforce our conclusion that an award of prejudgment interest would fairly compensate Singer for his loss.

B

The trial court's discretion is limited by "custom." *Little v. Begay*, 7 Nav. R. at 354. The Navajo common law doctrine of *nályééh* is applicable to this case. We have said that *nályééh* is based upon the effects of the injury, and it should be enough so that there are no hard feelings. *Benalli v. First Nat'l Ins. Co. of America*, 7 Nav. R. 329, 338 (Nav. Sup. Ct. 1998). We compared insurance to a bag with monies available to see to the plaintiff's needs in that case. *Id.* at 337-338. There are procedures for arriving at *nályééh* that involve the respectful talking out of a dispute. The person requesting *nályééh* should be willing to lay out all the facts of the problem and the injury, and the listener should acknowledge the request to talk out the problem and then participate in good faith.

These principles were obviously violated when State Farm refused to negotiate in good faith. Singer told the district court of his difficulties attempting to negotiate a settlement and to get a fair offer. He then pointed out that any delay was not his fault. We have before us the history of Singer's claims and offers and State Farm and Nez's attorney's refusal to negotiate in good faith and disrespectful response which led to a trial. It is appropriate to award prejudgment interest in this case so there are no hard feelings.

IV

We will give some guidance on how to compute prejudgment interest for the bench and bar. An award of prejudgment interest as compensatory damages should be computed by establishing the past loss or economic damage, the period of time between the events recited above and the date of judgment in terms of years or months, and the appropriate interest rate. There is a great deal of controversy about interest rates, with attorneys advocating different rate formulas, to urge a given high or low. In this case, Singer wants 12% interest per year. The issue is whether that rate is a reasonable one to make him whole for the loss of the earning power of the money due to him.

While it would be convenient for the bench and bar to have a clearly

established interest rate or rule for awarding interest, we recognize that changing economic times could make that an unrealistic rate or rule which would result in unfairness to one party or another. Instead, we advise that when a plaintiff claiming prejudgment interest proposes an interest rate, it is up to the defendant to show that it is unreasonable. Insurance companies make annual reports of their earnings each year, and they often show the amount of profit the company has made in terms of interest and earnings. If the concept is to take the interest earned by the person who holds the bag to deprive him or her of the benefit of holding the money when it should have been paid out, then that would be a good approach to the problem. The plaintiff can propose an interest rate, and the defendant can disclose how much it earned overall in monies held for shareholders or potential claimants in any objection to the proposed interest rate.

V

The above discussion should lay the foundation for prejudgment interest law in the Navajo Nation. We will reserve the possible evolution of the Navajo Nation prejudgment interest law beyond this foundation for future questions.

We reverse the order of the Window Rock District Court denying Singer's request for prejudgment interest. This case is remanded to that court for an award of prejudgment interest in accordance with this opinion.