NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EXTREME NETWORKS, INC.,**
*Plaintiff-Cross Appellant,*

v.

**ENTERASYS NETWORKS, INC.,**
*Defendant-Appellant.*

---

2009-1325, -1346

---

Appeals from the United States District Court for the Western District of Wisconsin in case no. 07-CV-229, Chief Judge Barbara B. Crabb.

---

Decided: September 30, 2010

---

MARGARET M. DUNCAN, McDermott Will & Emery LLP, of Chicago, Illinois, argued for plaintiff-cross appellant. With her on the brief were DAVID L. LARSON, of Menlo Park, California; and JOEL M. FREED, NATALIA V. BLINKOVA, and BUREDEN WARREN, of Washington, DC.

DAVID P. SWENSON, Robins, Kaplan, Miller & Ciresi L.L.P., of Minneapolis, Minnesota, argued for defendant-appellant. With him on the brief were SCOTT M.

FLAHERTY; and CHRISTOPHER P. SULLIVAN, WILLIAM J. ROCHA, REBECCA A. MACDOWELL and ALAN E. MCKENNA, of Boston, Minnesota.

_____

Before RADER, *Chief Judge*, and LOURIE and PROST, *Circuit Judges*.

RADER, *Chief Judge*.

Extreme Networks, Inc. ("Extreme") and Enterasys Networks, Inc. ("Enterasys") accuse each other of patent infringement. The United States District Court for the Western District of Wisconsin granted summary judgment of non-infringement of Enterasys's patents: U.S. Patent Nos. 5,430,727 ("'727 patent") and 5,195,181 ("'181 patent"). *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 558 F. Supp. 2d 909, 924 (W.D. Wis. 2008). Before proceeding with trial on Extreme's infringement claims, the district court granted Extreme's motion to exclude Enterasys's expert from testifying. *Extreme Networks, Inc. v. Enterasys Networks, Inc.*, No. 07-cv-229, 2008 WL 4621440, at *2 (W.D. Wis. May 16, 2008). After the jury trial, the district court entered a final judgment of infringement against Enterasys, but denied Extreme's motion for attorney fees. *See Extreme Networks, Inc. v. Enterasys Networks, Inc.*, No. 07-cv-229, 2008 WL 4756498, at *6-7 (W.D. Wis. Oct. 29, 2008).

Because the district court erroneously construed the contested limitation "digest of information," this court vacates the summary judgment as to the '181 patent. This court also vacates the denial of Extreme's motion for attorney fees. In all other respects, this court affirms.

I

The '727 patent— "Multiple Protocol Routing"—issued

on July 4, 1995, based on a May 19, 1994 application. The '727 patent covers a "brouter," which can operate both as a bridge and a router. Claims 5, 6, and 7 of the '727 patent are at issue on appeal. Claim 5 is representative and recites:

> A device which is capable of acting as a router to forward to and from end systems user data packets and is capable of acting as a bridge to forward between networks user data packets, said device comprising
>
>> router circuitry causing said device to act as a router recognizing and forwarding user data packets conforming to a first protocol suite,
>>
>> *bridge circuitry causing said device to act as a bridge recognizing and forwarding user data packets conforming to at least a second protocol suite,*
>>
>> control circuitry causing said device to act as a bridge rather than as a router for a user data packet which conforms to said first protocol suite and is addressed to a single address which is not an address of the device.

'727 patent col.60 ll.20-34 (emphasis added). Claims 6 and 7 depend from claim 5.

The '181 patent—"Message Processing System Having Separate Message Receiving and Transmitting Processors with Message Processing Being Distributed Between the Separate Processors"—issued on March 16, 1993, based on a January 10, 1992 application. The '181 patent provides a scheme for partitioning workload between receive and transmit processors so that a data packet can quickly and efficiently move through a multiprocessor system. Each receive processor collects information

relating to the network protocol processing of a particular data packet into a "digest." '181 patent col.4 ll.57-62. "The information placed in the digest comprises information that is necessary for the completion of the processing tasks to be performed by the [transmit processors]." *Id.* col.4 ll.62-65.

Claims 1, 6, and 7 of the '181 patent are at issue on appeal. Claim 1 is representative and recites:

A computer system for transmitting messages in a computer network, which comprises:

a message receiving processor adapted to receive messages from the computer network;

a separate message transmitting processor coupled to the message receiving processor;

the message receiving processor operating to perform first preselected processing of a message received by the message receiving processor and to generate a *digest* of information relating to the message, *the digest containing network protocol processing information for message transmit processing*;

the message receiving processor transmitting the message and the *digest* o [sic] the message transmitting processor;

the message transmitting processor operation to perform second preselected processing of the message using the network protocol processing information in the *digest*.

'181 patent col.12 ll.50-68 (emphases added).

## II

On April 20, 2007, Extreme sued Enterasys alleging

infringement of three Extreme patents. On May 30, 2007, Enterasys counterclaimed, alleging infringement of the '727 patent, the '181 patent, and a third patent, which Enterasys later voluntarily dismissed. On May 5, 2008, the district court granted summary judgment of non-infringement of the '727 patent based on its construction of the terms "acting as a bridge" and "bridge circuitry." The district court also granted summary judgment of non-infringement of the '181 patent based on its construction of the term "digest." The district court thus disposed of Enterasys's infringement claims.

Before holding a trial on Extreme's infringement claims, the district court granted Extreme's motion in limine to preclude Enterasys's expert Barbara Frederiksen from testifying in support of its noninfringement and invalidity defenses. Extreme obtained a verdict in the amount of $201,213. The district court denied Extreme's motion for attorney fees.

Enterasys appeals the district court's grant of summary judgment of non-infringement of the '727 and '181 patents and its decision to exclude Frederiksen's expert testimony. Extreme cross-appeals the denial of its motion for attorney fees.

## III

As an initial matter, Extreme argues that this court does not have jurisdiction over this appeal because Enterasys's notice of appeal was untimely. The district court entered judgment on November 5, 2008. The parties then filed post-trial motions, including motions to calculate pre-judgment interest, post-judgment interest, and supplemental damages. The district court entered an order disposing of all such motions on March 16, 2009. The court clerk entered an amended judgment on March 19, 2009. Enterasys filed its notice of appeal on April 17,

2009. Extreme argues that the November 5, 2008 order was a final judgment and that the time to file an appeal re-started on March 16, 2009. If Extreme's assumptions were correct, Enterasys's notice of appeal, which was filed more than thirty days after the March 16, 2009 order, would be untimely.

A final judgment "ends the litigation on the merits and leaves nothing for the [district] court to do but execute the judgment." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1311 (Fed. Cir. 2009) (citation omitted). Where substantive issues remain unresolved, a "judgment standing alone as issued by the district court [is] insufficient to establish dismissal of the entire action and . . . could not be the basis for providing [the Federal Circuit] with subject matter jurisdiction." *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1267 (Fed. Cir. 2007).

"Prejudgment interest is an element of complete compensation." *West Virginia v. United States*, 479 U.S. 305, 310 (1987). "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Id.* at 310 n.2. Therefore, courts should calculate prejudgment interest before determining the amount of damages that would fully compensate the patentee for the infringer's use of the patented invention.

The November 5, 2008 judgment did not constitute a final judgment because it left unresolved prejudgment interest, even though the parties had previously notified the district court of their unresolved dispute over its calculation. The district court did not calculate prejudgment interest until the March 16, 2009 order. Because the March 19, 2009 amended judgment resolved all pend-

ing issues, under the facts of this case, it is the only final judgment. Because Enterasys filed its notice of appeal within thirty days thereafter, this court has jurisdiction.

IV

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Thus, a court may grant summary judgment "when no reasonable jury could return a verdict for the nonmoving party." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1365 (Fed. Cir. 2009) (citations omitted). This court reviews a grant of summary judgment of non-infringement without deference. *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). This court also reviews claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

Claims 5, 6, and 7 of the '727 patent include the limitation: "bridge circuitry causing said device to act as a bridge recognizing and forwarding user data packets conforming to at least a second protocol suite." '727 patent col.60 ll.20-39. The district court held that the brouter "recognizes" the type of protocol suite to which a data packet belongs and decides whether to forward the data packet as a bridge or a router based on the protocol suite. The district court granted summary judgment of non-infringement because it found that the accused Extreme devices do not base their decisions on the protocol suite.

The district court correctly construed the "bridge circuitry" limitation. The parties agree that the brouter has

some decision-making capabilities. The claim language implies that the recognition of the second protocol suite triggers the brouter's decision to act as a bridge or a router because it does not specify any other criteria by which the brouter can determine how it will forward the data packets.

The specification supports this interpretation of "bridge circuitry." The only disclosed embodiment of a brouter "is arranged to treat TCP/IP packets as if the router were a normal IP router and to treat all other packets as if the router were a bridge." '727 patent col.50 l.67-col.51 l.2. The brouter treats a data packet conforming to TCP/IP by routing it and a data packet conforming to a different protocol suite by bridging it. The specification does not disclose any other basis for deciding whether to route or bridge a data packet. Although this court must be careful not to read an embodiment into a claim, the specification of the '727 patent supports the causal connection between the recognition of the data packet's protocol suite and the determination whether to act as a router or a bridge. Accordingly, the district court correctly held that the claimed brouter must make a decision whether to bridge or route a data packet based on the protocol suite to which the data packet conforms.

Enterasys also argues that there is a genuine issue of material fact as to how Extreme's accused devices decide whether to route or bridge a data packet. In its summary judgment motion, Extreme argued that its devices forward the incoming data packets regardless of their protocol suites. In response, Enterasys merely alleged that the accused devices ascertain the data packets' protocol suites before routing or bridging them. Enterasys made no attempt to establish that the determination of the protocol suite has any bearing on the devices' decision to "act as a bridge." Accordingly, there is no genuine issue of

material fact.

Finally, Enterasys argues it is entitled to pursue additional discovery on Extreme's devices because the district court changed its claim construction of "bridge circuitry" over time. The district court did not change its construction of "bridge circuitry." Also, this court finds that Enterasys could have conducted its discovery in anticipation of the final claim construction. Enterasys never sought relief on the ground that it had been unable to obtain the necessary discovery to dispute that Extreme's devices do not use the protocol suite in deciding how to forward data packets. Enterasys had a full opportunity to take the discovery it now demands. Thus, Enterasys is not entitled to additional discovery. Accordingly, this court affirms the summary judgment of non-infringement of the '727 patent.

V

Claims 1, 6, and 7 of the '181 patent recite: "the message receiving processor . . . to generate *a digest of information* relating to the [received] message, the digest containing network protocol processing information for message transmit processing." '181 patent col.12 ll.50-68, col.14 ll.18-43. The district court explained in its summary judgment order that because the digest "contain[s]" network protocol processing information, "the digest is a structure and not the contents of the structure." *Extreme Networks*, 558 F. Supp. 2d at 920. The district court granted summary judgment of non-infringement based on Enterasys's alleged concession that Extreme's devices do not have such a structure.

The parties agree that the term "digest" does not have a specific definition in the relevant art. The term "digest" ordinarily means a collection of information. *See* Merriam-Webster's Collegiate Dictionary (10th ed. 1993)

(defining "digest" as "a summation or condensation of a body of information"); Random House Webster's College Dictionary (1991) (defining "digest" as "a collection or compendium, as of literary or scientific matter, esp[ecially] when classified or condensed"). A "digest," which is a condensation of a body of information relating to the received message, would logically be a set of data rather than a structure containing that data. The district court erred by focusing on the claim term "containing" and concluding that something "containing" information cannot also be information. To the contrary, the term "containing" does not indicate whether the "digest" is a structure or the contents of a structure.

Moreover, the following passage in the specification clarifies that a "digest" is a collection of information relating to network protocol processing of a particular message:

> [T]he present invention arranges each [receiving processor] to *collect, into a digest, information relating to network protocol processing of a particular message*, obtained via sequential byte processing of the message at the time of reception of the message. . . . *[This] digest can include, for example, certain information* from the data link layer header of a received message. *The data link information can include, for example, last hop information* that is used by the processor of the transmitting line interface card in the transmission of the message."

'181 patent col.4 ll.57-62, col.4 l.68-col.5 l.5 (emphases added). "[The] digest can include . . . certain information" just like "[t]he data link information can include . . . last hop information." *Id.* This parallel language further suggests that the digest, like the data link information, is

information. Specifically, the digest contains "network protocol processing information" that is related to processing of the message but may contain other information that could assist other processors in processing the message. Accordingly, this court vacates the summary judgment of non-infringement of the '181 patent.

## VI

Enterasys has the burden of establishing that Frederiksen's expert testimony is admissible based on her "knowledge, skill, experience, training, or education" in the relevant technology. Fed. R. Evid. 702. Courts must determine whether expert testimony is reliable by assessing whether the expert is qualified in the relevant field. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). A district court's decision to preclude expert testimony is an evidentiary issue, which this court reviews under the law of the regional circuit. *Research Corp. Techs. V. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008). The U.S. Court of Appeals for the Seventh Circuit reviews evidentiary rulings for an abuse of discretion. *Von Der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009).

The district court did not abuse its discretion by excluding Frederiksen's testimony on the ground that she was not qualified as an expert in the relevant art. Both parties agree that a person of ordinary skill in the art pertinent to Extreme's patents would have a substantial background in switches, bridges, and routers. Frederiksen opined that an ordinary artisan was:

An individual with a Bachelor of Computer Science or computer engineering degree, or equivalent experience, and 2-3 years experience in the computer industry *working on the design or development of high speed switches, bridges, or routers*

for wide area networks (e.g. frame relay, ATM); local area networks (e.g. Ethernet, FDDI, token ring, etc.); or military networks.

(J.A.1350-01 (emphasis added)). Extreme's expert, Dr. Nathaniel Davis, identified a similar set of criteria for defining the person of ordinary skill, although his definition included somewhat more industry experience.

Frederiksen would not qualify as a person of ordinary skill in the relevant art even under her own proposed definition. Frederiksen received an Associate of Applied Science degree in Computer Programming. She worked as a system administrator for several corporations, but she never seems to have worked on "the design or development of high speed switches, bridges, or routers." General experience in a related field may not suffice when experience and skill in specific product design are necessary to resolve patent issues. *See, e.g.*, *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1360-61 (Fed. Cir. 2006) (affirming exclusion of an ergonomics expert where the invention at issue related to an ergonomic keyboard design). Therefore, the district court did not abuse its discretion by ruling that Frederiksen was an unqualified expert.

## VII

This court affirms the summary judgment of non-infringement of the '727 patent and the decision to exclude Frederiksen's expert testimony. This court vacates the summary judgment of non-infringement of the '181 patent and thus vacates the denial of Extreme's motion for attorney fees as premature given the fact that infringement of the '181 patent may need to be redecided. This court remands the case for further proceedings consistent with the opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**